## THE STATE v. WOODS, *Appellant.*

1. **Instructions:** MURDER. Instructions defining murder in the first and second degrees and manslaughter in the third and fourth degrees examined and approved.

2. ———— : —— —. Where the instructions given on the part of the state sufficiently instruct the jury on certain degrees of the crime, it is not error to refuse others asked by defendant on that subject.

3. **Evidence:** MURDER. The evidence in a case of murder in the second degree examined and *held* that it warranted the verdict of the jury.

*Appeal from St. Louis Criminal Court.*—HON. G. S. VANWAGGONER, Judge.

AFFIRMED.

*Thos. B. Harvey* for appellant.

(1) The court erred in the instructions given of its

own motion. ( 2 ) The court erred in refusing to instruct the jury upon the question of cooling time. "Whether there has been cooling time is eminently a question of fact, varying with the particular case and with the condition of the party." 1 Whart. Crim. Law ( 9 Ed.) sec. 480 and citations ; Whart. on Hom. sec. 449. "The separation of two persons engaged in a fight, which eventually terminates in a homicide, to justify a verdict of murder, must be for a time sufficient for the passions excited by the fight to have subsided and reason to have resumed its sway." *State v. Moore,* 69 N. C. 267 ; *State v. Sizemore,* 7 Jones ( N. C.) 206. The question is one of fact for the jury. *Maher v. People,* 10 Mich. 212 ; *Hurd v. People,* 25 Mich. 405.

*B. G. Boone,* Attorney General, for the State.

( 1 ) The instructions given by the court were correct. ( 2 ) The instructions asked by defendant were covered by those already given.

NORTON, C. J.—At the May term, 1885, of the criminal court for the city of St. Louis, defendant was tried and convicted of murder in the second degree for killing one Joseph Hunter and from the judgment has appealed.

The evidence tends to show that Joseph Hunter, the deceased, who was a colored man, was at work as a porter in the Drew Glass Company's building in the city of St. Louis, and while at work there, on the fifth of December, 1882, the defendant, in company with one Stith, came along ; that some angry words passed between the defendant and said Hunter, culminating, according to the evidence of some of the witnesses, in a fight on the platform in front of the door leading into the Drew Company's building ; that one Maloney, an employe of the company, interfered and the parties were separated at said door, Hunter resuming his work

The State v. Woods.

in the building, Woods, the defendant, and Stith, his companion, going across the street to a grocery-store or a saloon in the rear thereof, where they remained some ten or more minutes, and on coming out, Woods, as testified to by witness Banks, said, " I can lick any son of a bitch over there," pointing towards the Drew Company's building ; that his companion Stith said to him, "Come on home," to which Woods replied, "Give me the knife and I will go home," Stith then said, "Will you be sure to come now," and Woods said, "Yes." Witness stated that Stith then handed Woods something, and both of them started south, and that when he again noticed them, they had turned north and were going back towards the Drew building. This witness further testified that when Woods asked Stith for the knife, he said, " Give me the knife and I will go over there and kill the damned son of a bitch," or "black son of a bitch." The testimony of this witness as to the knife was corroborated by Richard Coats.

When Woods and Stith got back to the door of the building, one Sheehan who was at work for the glass company, stepped to the door and put his hands on each side of the door-facing to prevent Woods from coming into the house. Woods insisted upon going in, claiming that he had lost a collar button in there. Sheehan told him he could not have lost it in the glass store because he had not been in there. It appears that Hunter, in the meantime, had gone up in the elevator, which was about four feet from said door, with a load of glass ; that when he came down, Sheehan was still standing in the door to prevent Woods from entering, and Hunter then picked a piece of pine-box top, half inch thick and two or three inches wide, and struck Woods with it over Sheehan's shoulder, whereupon Woods rushed into the room grappled with Hunter and stabbed him in the groin, cutting the femoral artery. Hunter fell over and died in a few minutes being unable

to talk after he was stabbed.    Defendant ran out of the building,   threw   his   knife   away,   was   pursued and captured on  Washington  avenue,  and,  on  being asked by the officer why he had cut that man, said,  "What man ? I cut no man."    The officer  testified that W oods was under the influence of liquor.

No objection  was made  or exception  saved  to the reception or rejection of  evidence  but it is claimed that the court erred in giving and refusing instructions.    The court gave sixteen instructions of  its  own motion,  which we deem it unnecessary to  insert  here,  as  an examina- tion of them shows that they are in substance copies of instructions  which  have  been  repeatedly  published in our reports,  and  received  the  approval  of this court. By them the jury were instructed as to what constituted murder in the first and second  degrees, and  as  to man- slaughter in the  third  and  fourth  degrees.    The usual instructions as to self-defense  and as to the duty of the jury  to  acquit  unless  convinced  beyond a  reasonable doubt of  defendant's  guilt  are  also  embraced  in those given.

On  comparison it is  found  that  the first,  second, third,  fourth,   sixth,   seventh,   tenth,   fourteenth and fifteenth  are copied  from  or are  like those given in the case of  State v.  Thomas,  78 Mo. 431,  which  were passed upon,  and  properly  pronounced  to be  exceptionally good.    The eleventh  instruction,  defining manslaughter in the fourth degree, is sanctioned by the case of State v. Peak,  85 Mo. 193.    The twelfth and  thirteenth  instruc- tions, defining manslaughter in the fourth degree, are jus- tified by the cases of  State v.  Hicks,  92 Mo. 431 ; State v. Branstetter,  65 Mo. 149 ;  State v.  Thomas,  supra.

The jury having been  sufficiently  instructed as to what constituted manslaughter in the fourth degree, as well as the third,  there was no  error in refusing those asked by the defendant on that subject.

Nor  was there  error  in  refusing  the  following :

"The court instructs the jury that after the blood had been heated and passion aroused by a blow, the law does not deem the space of ten or fifteen minutes sufficient for the blood to cool or passion to subside." This question was submitted favorably to defendant in the fifth instruction given by the court as follows:

"5. The court further instructs the jury that, if at the time of the alleged homicide, or a few minutes before the time of the alleged homicide, the deceased, Joseph Hunter, and the defendant were engaged in a mutual fight, or were using violence or abusive or insulting language to each other, and were in a violent passion engendered by such language at the time of the homicide, then the instant killing in such a state of mind is not an act of deliberation and will not be murder in the first degree; and whether such passion existed at the time of the alleged homicide is a question of fact which the jury must decide from the evidence as one of the facts in this case."

In view of the evidence, which tended strongly to show that defendant, previous to the homicide, had procured a knife for the purpose of killing the deceased, and which he soon after used with fatal effect, and the evidence which tended strongly that his wanting to get into the Drew Glass Company's house to look for a collar button which he claims to have lost, was a pretense, his companion, Stith, having testified that the first difficulty took place on the platform outside of the house, the verdict of the jury was fully warranted, and the judgment is hereby affirmed, with the concurrence of BLACK, J.; BRACE, J., concurs in the result.

SHERWOOD, J.—I concur in the result on the sole ground, that, as I understand the facts, there was no self-defense in the case.