THE STATE v. YOUNG, *Appellant.*

1. **Criminal Practice :** AFFIDAVIT FOR CONTINUANCE : ADMISSION. The affidavit for continuance made by the defendant at a former term of the court is competent evidence against him as to admissions contained therein.

2. ———: EVIDENCE : STATEMENTS IN PRESENCE OF ACCUSED. A statement to the officer, that he had the right man, made in the presence of defendant, when under arrest, by a stranger to him, is not admissible against defendant, though not replied to by him.

3. ———: INSTRUCTIONS : LOWER GRADES OF HOMICIDE. It is the duty of the court to give instructions on lower grades of homicide than murder in the first degree, when admissions of defendant, offered in evidence by the state, authorize such instructions.

4. ———: ———: DUTY OF COURT. Where instructions asked by the defendant as to such lower grades of homicide are erroneous, it is the duty of the court to give proper ones in their stead.

5. ———: ———: TESTIMONY OF DEFENDANT AND HIS WIFE. The court under our criminal practice may instruct the jury that in weighing the testimony of the defendant or his wife, they may consider that he is the accused and she is his wife. (SHERWOOD, J., *dissenting.*)

6. ———: ———: ADMISSIONS. Where the defendant becomes a witness in his own behalf, it is not necessary, in order to make his written statement before a coroner admissible against him, to lay the usual foundation by calling his attention particularly to it. (RAY, C. J., and SHERWOOD, J., *dissenting.*)

7. ———— : OBJECTIONABLE REMARKS OF PROSECUTING ATTORNEY. It is error to permit the prosecuting attorney to state in his argument that "the defendant is a mean, low down, wicked, dirty devil," and that "when we proved that defendant admitted the killing the presumption of innocence was overthrown," as this presumption continues till verdict, and an admonition by the court "to keep within the record" does not cure the error, where the obnoxious remarks were continued.

*Appeal from Lafayette Circuit Court.*—HON. J. E. RYLAND, Judge.

REVERSED AND REMANDED.

*John S. Blackwell* for appellant.

(1) The court below erred in permitting the witness Wilson to testify as to what was said by one Craft in the presence of the defendant after he was arrested. Wharton's Criminal Evidence [8 Ed.] sec. 680; *United States v. Brown*, 4 Cranch (C. C.) 508; *Com. v. Kinney*, 12 Met. 235; *Com. v. Walker*, 13 Allen, 510; *State v. Walker*, 78 Mo. 388; *Com. v. McDermott*, 123 Mass. 470; *State v. Glahn*, 97 Mo. 694; *Slattery v. People*, 76 Ill. 217; *Bob v. State*, 32 Ala. 560; *State v. Hamilton*, 55 Mo. 520. (2) The court erred in permitting the state to introduce as evidence the application and affidavit of defendant for a continuance of the cause at the October term, 1888, of said court. (3) The court erred in permitting the paper purporting to be signed by defendant to go to the jury without having laid the proper foundation therefor by calling defendant's attention to it. *State v. Elkins*, 63 Mo. 159; *Prewitt v. Martin*, 59 Mo. 325; *State v. Foye*, 53 Mo. 336; *State v. Starr*, 38 Mo. 270; *State v. Parker*, 96 Mo. 393; Wharton's Criminal Evidence [8 Ed.] sec. 483 and note; *State v. Stein*, 79 Mo. 332; *Steamboat Chas. Morgan*, 115 U. S. 69; *Gregory v. Cheatham*, 36 Mo. 155; *Stephens v. People*, 19 N. Y. 549; *Samuels v. Griffith*, 13 Iowa,

103; *State v. Devlin*, 7 Mo. App. 36. (4) The court erred in instructing on murder in the first degree; the evidence did not warrant it. *State v. Holme*, 54 Mo. 153; *State v. Underwood*, 57 Mo. 40; *State v. O'Hara*, 92 Mo. 59; *State v. Foster*, 61 Mo. 549. (5) The court erred in giving instructions for the state. (6) It also erred in not giving instructions numbered 4, 5 and 6, as asked by defendant. *State v. Branstetter*, 65 Mo. 149; *State v. Edwards*, 70 Mo. 480; *State v. Curtis*, 70 Mo. 600; *State v. Ellis*, 74 Mo. 207; *State v. Berkley*, 92 Mo. 41. (7) There should have been given an instruction defining murder in the second degree. *State v. Banks*, 73 Mo. 592; *State v. Mathews*, 20 Mo. 55; *State v. Stonum*, 62 Mo. 596; R. S. 1879, sec. 1908. (8) The court erred in permitting Hardin, who was hired to assist the prosecuting attorney, to close the argument to the jury. R. S. 1879, sec. 1908. (9) The court further erred in permitting said Hardin to make improper remarks and arguments to the jury. The admonition to him by the court to keep within the record did not cure the error. It should have stopped him in his argument and rebuked him for it and corrected his erroneous misstatements. *State v. Barham*, 82 Mo. 67; *State v. Lee*, 66 Mo. 165; *State v. Kring*, 64 Mo. 591; *State v. Foley*, 12 Mo. App. 431; *State v. Rothschilds*, 68 Mo. 58; *State v. Jaeger*, 66 Mo. 173; *Ritter v. Bank*, 87 Mo. 574.

*John M. Wood*, Attorney General, for the State.

(1) The confessions and admissions made by the defendant to the witnesses who testified thereto (as shown by the testimony taken by the court in the absence of the jury) were not induced or extorted by means of any promises or threats, or other influences calculated to excite his hopes or fears, and they were admissible. *State v. Hopkirk*, 84 Mo. 278; Whar. Crim. Ev. [9 Ed.] secs. 672 and 673; 1 Green. Ev., sec. 223;

1 Roscoe's Crim. Ev., p. 68. (2) Defendant had requested an inmate of his house to tell his wife to come into the room where he was, just as he was arrested and was looking for a different shirt from the one he had had on the night before; when the marshal requested Craft, who was his deputy, to go and tell her, and when Craft returned he said in the presence and hearing of the defendant, "You need not go any further; you have got the right man." This was such a declaration as under the circumstances would ordinarily call for a reply from a person situated as defendant was, and was admissible. 1 Green. Ev., sec. 197; 1 Roscoe Crim Ev., sec. 56. (3) The expert testimony as to whether the wounds were sufficient to cause death was based upon the testimony of a witness, who had examined the wounds, and was competent. 1 Green. Ev., sec. 440; *State v. Klinger*, 46 Mo. 224. (4) Evidence of riotous and violent conduct by other persons in the streets of the town of Corder, or about defendant's house, on the night of and after Ferguson was killed, was incompetent, and properly excluded. The occurrences were not near enough to the homicide in point of time to constitute part of the *res gestæ*, nor was there any offer to connect deceased with such persons, or the act of defendant to any such cause. *State v. Swain*, 68 Mo. 605. (5) The affidavit for a continuance made by the defendant at a previous term was competent evidence against him of his admissions. *State v. Hayes*, 78 Mo. 307. (6) There were no errors committed in the admission or exclusion of testimony, which tended to prejudice the substantial rights of the defendant, or which will justify a reversal. *State v. Holme*, 54 Mo. 160; *State v. Grate*, 68 Mo. 22. (7) The third, fifth, seventh and eleventh instructions, given on the part of the state, are substantially the same as those given in the case of *State v. Talbott*, 73 Mo. 347, on the same points. (8) The third and fourth instructions, given on the part of the

state, were the counterparts of instruction number 1, given on the part of defendant, and were correct. *State v. Talbott*, 73 Mo. 347; *State v. Thomas*, 78 Mo. 327; *State v. Jones*, 86 Mo. 627; *State v. Gee*, 85 Mo. 647. (9) The fifth instruction, on the part of the state, was proper. *State v. Talbott*, 73 Mo. 356, and authorities cited. (10) The seventh instruction is a literal copy of an instruction approved in the *Talbott case*. (11) The ninth instruction, in regard to the verdict and punishment, is in accordance with the statute. The jury were similarly instructed in the case of *State v. Thomas, supra*. (12) The eleventh, as to the credibility of the witnesses, is correct. *State v. Thomas, supra; State v. Talbott, supra; State v. Gee, supra*. (13) The twelfth and thirteenth instructions, given on the part of the state, as to the credibility of the testimony of defendant and his wife, were proper. R. S. 1879, sec. 1918; *State v. Cook*, 84 Mo. 40; *State v. Miller*, 93 Mo. 263. (14) There was no error in the refusal of the fifth instruction, asked by defendant. It was fully embraced within other instructions which were given. (15) There is no evidence in the case that deceased "first assaulted and struck defendant, and that deceased, in such assault and striking, used insulting, profane, indecent or abusive language to or about defendant, and that defendant, in immediate retaliation," etc., stabbed and killed the deceased, as assumed in the fifth instruction asked by defendant. Nor is there any evidence upon which to predicate the sixth instruction asked by him. *State v. Gilmore*, 95 Mo. 554; *State v. Stephens*, 96 Mo. 638. Where the homicide has been committed and the further inquiry relates to the mental condition prompting it, only what the doer knew is relevant, for that alone could have influenced his mind or in any way contributed to the doing. 2 Bish. Crim. Proc., sec. 611. (16) The remarks of counsel, in his closing argument, were not such as to justify a reversal. *State v.*

*Zumbunson*, 86 Mo. 111; *State v. Emory*, 79 Mo. 461.
. (17) There was no error in permitting Mr. Hardin to
assist in the prosecution or to make the closing argu-
ment.    *State v. Sweeney*, 93 Mo. 38; *State v. Griffin*, 87
Mo. 608; *State v. Hamilton*, 55 Mo. 520; *State v. Stark*,
72 Mo. 37.

SHERWOOD, J.—The defendant being convicted of
murder in the first degree, and sentenced accordingly,
appeals to this court, and assigns various errors as
grounds for reversal of the judgment.

The indictment charges that the defendant murdered
Stephen Ferguson on the tenth day of December, 1887,
by stabbing and cutting him with a knife; and there
was evidence to establish the charge consisting of direct
testimony as well as admissions made by the defendant,
both orally and in writing.    Ferguson was found the
morning of the eleventh of December dead, with his
throat cut; his body was lying at a point about sixty-
five yards west of where a north and south line, if drawn
between defendant's house and Birne's saloon, would
strike the railroad, and the saloon was about forty yards
north of the railroad.    The distance between defendant's
house and the saloon was about one hundred and sixty
yards.    The killing is said to have occurred at about
eleven o'clock on the night of the tenth of December.
The most friendly relations were shown to have existed
between the defendant and the deceased.    The latter
was left in the saloon when defendant, Henry Hoppe
and Peter Fuchs with him, obtained a case of beer and
started to go to defendant's house.    The defendant was
absent when going after the beer only about fifteen
minutes, and when he returned home his face was
wounded, cut in three places and covered with blood.
His wife, mother-in-law and his brother, washed the
blood off his wounds and put him to bed.

There is no dispute as to the fact of the defendant
returning home from the saloon with a bleeding face,

since this is shown by witnesses on both sides; and the cuts on his face were plainly to be seen two days afterwards, as shown by the testimony of the prosecuting attorney; indeed, the scars from those wounds were visible on the face of the defendant some fourteen months after the homicide occurred.

The admissions of the defendant touching the killing were as follows: When charged by the marshal, Wilson, who had him under arrest, with having killed Ferguson, he said he "was not the only one in it." To Jackson, the deputy sheriff, when shown the corpse, and asked if he knew who it was, he said: "My God, what did I do that for?" Speaking further on the subject, he recognized as his the knife shown him by Jackson; said he had it last night and burst out crying, and on Wilson returning, defendant made a further statement in reference to the occurrence: "He said he was going from the saloon with a keg of beer or case of beer, whatever it was, on his shoulder and he met a man, he did not know who it was, and had some trouble with him, and the man struck him with a lantern; about that time Ferguson came along and asked him what did he strike that man for, that man had done nothing to him, and he said Steve struck at him with his open hand, 'and I stabbed him one.'"

To the prosecuting attorney, Wilson, he made these statements: "I first asked him what made the cuts, I think it was on his face, and he said a man by name of Hare had struck him with a lantern. I then asked him why he cut Steve Ferguson, and he said he did it because Steve Ferguson struck him, and that he called him a son of a bitch or damned son of a b—h, and I asked him if he struck him with his fist or open hand, and he said he did not know, but he did not strike him very hard, he did not knock him down, and he said that Ferguson after he, Ferguson, had struck him (Young) Ferguson turned around and started away from him

(Young), and I asked him (Young) where the knife was at the time Ferguson struck him (Young) and he said it was in his (Young's) pocket; after Ferguson struck him (Young) he put his hand in his (Young's) pocket and took the knife out of his pocket and opened it and followed after Ferguson and, when he got up to where Ferguson was, that Ferguson turned around as if he was going to strike him again, and then he cut him. I asked him how far Ferguson was from him when he started to follow after him and he pointed to the corner of the car" (a short distance).

And the following statement was also made by defendant at the inquest in the presence of the coroner, and reduced to writing: "We, Peter Fouks and Henry Hoppe and. myself, came out of the saloon. We met a man with a lantern, and asked him to show us the way across the railroad down to my house. The man said he would not do it, you son of a b—h. I asked him who you call a son of a b—h; he drew back and struck me with the lantern, in the face. Then he ran away, and I ran after him. Then Stephen Ferguson, the deceased, came and struck me. Then I opened the knife and cut at him. I had the knife in my right hand. The man was standing in front of me. After I struck I fell down, too. I must have cut him, or there would not have been blood on the knife. I knew that I was striking Steve Ferguson at the time.

his<br>
"CHRIS X YOUNG.<br>
mark

"In witness of us,

"J. M. LIVENGOOD,<br>
"W. R. JACKSON."

Other evidence of admissions of the defendant consisted of an application for a continuance, made by him at a former term, in which he denied that he had any trouble with Ferguson on the night of the homicide;

but stated that he and his companions, on leaving the saloon, left Ferguson there.

In his testimony upon the trial, the defendant also denied that he had any difficulty with Ferguson on the night in question, or that he had any knife then; but stated that he had a difficulty with two strangers, one of whom struck him in the face with a lantern, and the other had knocked him down, or had struck him twice and he fell down. He also stated that he and Ferguson were on the most friendly terms, and that he left the latter at the saloon when he started home.

I. The affidavit for a continuance, made by the defendant, at a former term of the court, was properly admitted in evidence on the authority of *State v. Hayes*, 78 Mo. 307.

II. There was error in admitting testimony as to what Craft said to Wilson, the marshal, to-wit: "You have got your right man; you don't have to go any farther to get him." There are two reasons why the ruling was erroneous:

*First.* Because the defendant was *under arrest*, and, therefore, in no position to make any denial as to what Craft said in his presence. His silence under Craft's remark will not warrant any inference against him. Wharton's Crim. Ev., sec. 680; *Com. v. Walker*, 13 Allen, 570; *U. S. v. Brown*, 4 Cranch (C. C.) 508; *Com. v. Kenney*, 12 Met. 235; *Rex v. Appleby*, 3 Stark. 33; *Bob v. State*, 32 Ala. 560.

*Second.* Because the remark was made by a mere *stranger* in his presence, and not to him. *Com. v. Kenney, supra; Child v. Grace*, 2 C. & P. 193; *Moore v. Smith*, 14 Serg. & R. 388; 1 Glf.'s Ev. [14 Ed.] sec. 199; *Melen v. Andrews*, 1 M. & M. 336; *Com. v. McDermott*, 123 Mass. 440. The defendant had the right, therefore, to treat the remark of Craft as mere impertinence, and best answered by silence. *Ibid.* See also *State v. Walker*, 78 Mo. 380; *State v. Glahn*, 97 Mo. 694; *State v.*

*Hamilton*, 55 Mo. 522. It is unnecessary to decide whether the error in this regard, if it stood alone, would constitute ground for a reversal, but it has been deemed necessary to point it out.

III. The instructions, given by the court at the instance of the state, limited the jury to finding the defendant guilty of murder in the first degree, if found guilty at all. On the part of the defendant, an instruction was given as to self-defense, as to which it is unnecessary to say anything, as the defendant is not complaining of that, nor could he do so after having asked it. But he complains, and justly complains, of the failure of the court to instruct the jury as to the lower grades of homicide. The admissions made by the defendant to Wilson, the prosecuting attorney, and that made to the coroner, certainly furnished ample basis on which to give instructions in regard to murder in the second degree and manslaughter in the fourth degree.

No one can read this record without being fully impressed with the idea that the defendant, and possibly some of his companions, were considerably inebriated when returning to his house from the saloon. And, although this would not furnish him any extenuation for the crime, it certainly would furnish some ground of excuse for making a mistake as to who struck him, and as to whom he struck. But, be that as it may, the state, having introduced in evidence the admissions of the defendant, admissions which authorized instructions for lower grades of homicide; instructions more favorable, perhaps, to the defendant, in view of all the facts in the case, than his own testimony on the witness stand warranted, cannot now insist that such instructions would have been erroneous. And, if the instructions asked by the defendant as to such lower grades of homicide were erroneous, it was the duty of the court to have given, in their stead, those which were correct expositions of the law of the case. *State v. Lowe*, 93 Mo. 547; *State v. Matthews*, 20 Mo. 55; *State v. Jones*, 61 Mo. 232.

IV.  Complaint is made that the court erred in giving, on behalf of the state, instructions 12 and 13, which read as follows :

"The court instructs the jury that defendant is a competent witness in this case, yet, in considering what weight and credibility you will give to his testimony in making up your verdict, you should take into consideration, as affecting his credibility, that he is the accused party on trial."

"You are further instructed that Kate Young, the wife of the defendant, is a competent witness in this case for the defendant, yet, in considering what weight and credibility you will give to her testimony in making up your verdict, you should take into consideration, as affecting her credibility, that she is the wife of the accused party."

The ground of the complaint is that those instructions invade the province of the jury in regard to what weight should be given to certain testimony.  Our statute, section 4220, Revised Statutes, 1889, which has remained unchanged on our statute book for a great number of years, provides that :— "The court shall not, on the trial of the issue in any criminal case, sum up or comment upon the evidence or charge the jury as to matter of fact."

There have been numerous decisions on this statute, and many reversals of judgments have occurred because of the failure of the lower courts to heed the statutory prohibitions.  Touching on this point, and speaking of the instructions in a certain case, SCOTT, J., said : "Some of them are mere comments on the evidence, or charges to the jury as to matters of fact, which the law forbids being given without the consent of both parties. R. C. 882, sec. 28.  What is striking in the instructions, is the attempt of the court to prescribe rules to the jury, by which they were to ascertain the credit due to a witness.  When a witness testifies to jurors, they are

the exclusive judges of the weight to be given to his testimony." *State v. Anderson*, 19 Mo. 241.

In *State v. Cushing*, 29 Mo. 215, it was said : "The first is an instruction directing the jury to disregard the entire evidence of a witness, if they believe him false in any particular. Such instructions invade the province of the jury, whose business it is to determine the credibility of witnesses, and who are not to be hampered in exercising their judgment by any inflexible rules on the subject."

In the *State v. Schoenwald*, 31 Mo. 147, SCOTT, J., speaking for the court, said : "There was no error in the refusal of the court to charge the jury that if the testimony of any witness bore upon its face the mark of gross improbability it is not necessary that such witness should be impeached by other witnesses, but the jury may disregard the testimony of any such witness. This instruction in effect was given by the court in the direction made as to the rule by which the jury would be governed in ascertaining the weight to be given to the evidence. Although the instruction stands as an abstraction, yet when it is applied to the evidence of any witness, it is nothing more than an attempt to control the jury in determining the credibility of the witnesses."

In the same case, the learned judge further remarked : "In my opinion, the court has no authority to prescribe any rules to the jury by which they are to determine the credibility of the witnesses. If the court can by authoritative rules direct the jury in weighing the credibility of witnesses, then the *court* and not the *jury* determines the weight to be given to the evidence, a matter exclusively within the province of the jury. The jury, from their experience and knowledge of the common concerns of life, are presumed to be the best triers of facts. They take with them into the jury box their experience in life, which has enabled them to form

the rules by which they will ascertain the weight to be given to the evidence of any one who speaks in their sight and hearing, having due consideration of the circumstances by which he is surrounded, his character, if known, and any influences which may operate upon him. Thus the rules are formed which the law supposes that jurors will apply in making their verdict on the evidence. If the court has a right to instruct, then the jury are bound to obey. If their verdict is formed in pursuance to rules concerning the weight to be attributed to evidence, dictated to them by the court, is the verdict a judgment on the facts by the *court* or by the *jury?* In considering this subject, we overlook the difference between the system of practice now prevailing and that formerly in use. Our courts cannot now, as formerly, comment on the evidence. When the practice was for the courts to comment on the evidence, the jury were always made to understand the weight to be attached to such comments and to the rules the judge might suggest for the weighing of the evidence. They were told that such comments were the mere opinions of the judge, who had no right to decide the facts, and were not binding on them; that they might disregard his opinion as to the weight of the evidence; it was mere advice; it was their province to find such a verdict as they deemed right, disregarding anything they might have heard from him. Now, because this right has been taken away from the courts, an effort is made to substitute for the advice formerly given to juries, which they would receive or reject as they thought right, authoritative rules, by which the jury are bound to be governed in determining the weight to be given to the evidence. If they are not bound by the instruction, then it is a comment and is not warranted by law. These instructions are generally asked by the counsel for the accused, and the motive to them is the hope that they may operate with the jury as an endorsement

by the judge of an onslaught on the character of a witness, thinking that the jury will take such an instruction as an intimation from him that there is a ground for disbelieving the evidence."

In *State v. Hundley*, 46 Mo. 414, similar observations are made as to the impropriety of instructions whose purport was to inform the jury as to the credibility to be given to the testimony of a certain class of witnesses. In *State v. Smith*, 53 Mo. 267, VORIES, J., in delivering the opinion of the court, observed: "The third instruction, given by the court on the part of the prosecution, tells the jury, 'that it is not sufficient to warrant an acquittal, for the defendant simply to show that at times he acted and talked strangely and singularly, but that the jury must believe from the testimony that he was insane at the very time he committed the offense, and that he was so insane that he could not distinguish right from wrong. This instruction was clearly wrong; it is not the province of the court to select certain facts shown by the evidence, and tell the jury how much and what weight they shall give to such facts, or whether they shall give such evidence any weight at all. The court passes upon the legality or admissibility of the evidence, but, after the evidence is legally admitted, it is the exclusive province of the jury to pass upon the weight of the evidence given, and give each part of the evidence such weight as in their judgment it is entitled to receive, without any interference or direction of the court whatever. Their minds ought to act freely on the facts of the case without any other control than that of their own unbiased judgment. This instruction is a comment on the evidence, which is expressly forbidden by our statute. (W. S. 1106, sec. 30.) The statute provides, that the court shall not 'sum up or comment on the evidence.' If the court can, under this statute, select certain portions of the evidence and tell the jury how much weight to give, or whether they

shall give the evidence selected any weight at all, then no reason can be perceived why the court could not select other parts of the evidence, or all of the facts in the case, and tell the jury what weight to give the same, and, in effect, tell what verdict should be found. To permit this, would be to wholly destroy whatever value there is in the right of trial by jury."

It will thus be seen that the doctrine enunciated in the early opinions of this court, coming down, indeed, to a comparatively recent period, forbids, as does the statute already quoted, any interference by the courts with the province of the triers of the facts. The only province of the court in instructing the jury *is as to the law of the case*, if certain facts are found by them to exist, *i. e.*, that if the facts are so and so, that then the law is so and so, upon those facts.

But reference is made to section 4218, where it is said that, "No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination, or by reason of being the husband or wife of the accused, *but any such facts may be shown for the purpose of affecting the credibility of such witness*." And this provision, it is argued, gives authority to the court to *comment* upon and to *instruct* upon the credibility of such witness. This, I take it, is a total misconception of the statute in question, and one which holds for naught the rigid provisions of section 4220, aforesaid. There are many instances where the relations of a witness towards one of the parties litigant may be shown in order to affect his credibility, yet this fact would not alter the statutory rule. Take, for instance, the case of a hostile witness, or of one closely related to the adverse party, no one would doubt that such bias or relationship might be shown in order that the jury might form the proper estimate of his testimony; yet no one would venture to contend that this fact would authorize an

instruction to the jury pointing out and commenting on the fact of such relationship or bias. It is one thing to follow the statute and show certain things to exist in order to call the attention of the jury to them; this is legitimate; but it is another and quite different thing to invade the province of the jury by giving an instruction to them based on the fact thus legitimately shown in evidence. For this reason I am of the opinion that those cases which announce a different conclusion were improvidently decided, and should no longer be followed. Of the number see *State v. Cook*, 84 Mo. 40.

V. Was the written statement of the defendant made by him before the coroner admissible in evidence without laying the usual foundation? In the case of any ordinary witness, one not a party to the record, the rule undoubtedly is that such foundation must be laid, —by challenging his attention to particular circumstances and occasions. Greenleaf says: "This course of proceeding is considered indispensable, from a sense of justice to the witness; for as the direct tendency of the evidence is to impeach his veracity, common justice requires that, by first calling his attention to the subject, he should have an opportunity to recollect the facts, and if necessary, to correct the statement already given, as well as, by a re-examination, to explain the nature, circumstances, meaning and design of what he is proved elsewhere to have said." 1 Greenleaf's Ev. [14 Ed.] sec. 462. And the authorities make no distinction, in this regard, between verbal and written statements. 1 Greenl. Ev., *supra; State v. Grant*, 76 Mo. loc. cit. 132, and cases cited.

Now, if common justice and fair dealing require that a suitable foundation be laid in order to affect the credit of an *ordinary* witness, one who only has his reputation for veracity at stake, it would seem that enough of the commodity, "common justice" should be left to bestow upon one acting in the double capacity of

both party and witness, on trial for his life, to whom it is all important that the little credit given to his story should not have its feeble force diminished by attacks upon his veracity, which would not be tolerated in the case of any other witness. Surely, the fact of his being a *party* should not have the effect of denying to him whatever protection the law should accord to him as a *witness*. This view seems to be favored in *State v. Reed*, 53 Iowa, 69; and *State v. Robertson*, 26 S. C. 117; but owing to the comparative recentness of the statutes, on this subject, but few adjudications seem to have been made upon them. The constitutionality of the statute itself, however, has been doubted by eminent jurists, because it *morally coerces* a party defendant to take the witness stand. *Ruloff v. People*, 45 N. Y. 213; *Connors v. People*, 50 N. Y. 240. Mr. Bishop, touching such enactments, says : "Before these statutes were passed, it was a cherished principle of common law, adopted generally in our constitutions where it still remains, that no man shall be compelled to furnish evidence criminating himself. But these late statutes have violated that principle in spirit, perhaps in letter. Under them, a defendant cannot avoid electing to testify, or not to testify. If the former, and he is guilty, he must declare his guilt or commit perjury. If the latter, he cannot escape from the inference of the jury, that, therefore, he is guilty. He may choose in which of two forms the evidence against himself shall be delivered, but to furnish it or commit perjury he is compelled."

Conceding, however, the constitutionality of the statute in question, and conceding further that the witness may be said to have done so voluntarily, still it should also be conceded that, in testifying as a witness, he lost none of the rights and privileges pertaining to other witnesses. *Connors v. People, supra.*

VI. Some of the language of the counsel for the state in the closing argument cannot be sanctioned; it

was as follows: "The presumption of law in this state is that when a charge is made against a party in his presence, and he does not deny it, he is presumed to be guilty." — "*The defendant is a mean, low down, wicked, dirty devil, that is the kind of man he is.*" — "When we proved that defendant had admitted the killing, the presumption of his innocence was overthrown, and the presumption of guilt took its place, the two could not stand together."

The first sentence, copied above, has been sufficiently commented on in the second paragraph of this opinion. The second statement, above copied, was *mere personal abuse* of the prisoner, and not to be tolerated in any tribunal calling itself a court of justice. The third sentence, above quoted, was not law, and was at war with the presumption of innocence which continues with the prisoner till the verdict of guilty overthrows that presumption. Such utterances as these have been so frequently, pointedly and recently condemned by this court, that it would seem high time that the prosecuting attorneys of this state should have heard of our rulings in this regard. *State v. Jackson*, 95 Mo. *loc. cit.* 652, *et seq.* and cases cited. See also *Brown v. Swineford*, 44 Wis. 282.

VII. The remark made by the court to counsel for the state from time to time, "*to keep within the record*," had no appreciable effect, because he still kept up his line of obnoxious remarks, undeterred by anything the court had said. A more pointed and effective rebuke should have been administered.

The judgment should be reversed and the cause remanded.

RAY, C. J., and BLACK, J., concur in paragraphs 1, 2, 3, 6 and 7, of the foregoing opinion. RAY, C. J., also concurs in paragraph 5; but BLACK, J., does not. No one concurs in paragraph 4.

BRACE and BARCLAY, JJ., concur in paragraphs 1, 2 and 3, except that they think that the paragraph, last named, should have sanctioned, also, the giving an instruction for manslaughter in the third degree; they dissent as to paragraphs 6 and 7.