THE STATE v. FAIRLAMB, *Appellant.*

Division Two, March 13, 1894.

1. **Criminal Law:** MURDER IN FIRST DEGREE. Any kind of willful, deliberate and premeditated killing is murder in the first degree under our statute. (R. S. 1889.)

2. ———: MURDER IN SECOND DEGREE. Where the killing was intentional but without deliberation and was not done in an attempt to commit a felony, it is murder in the second degree, unless it was justifiable.

3. ———: MURDER: INSTRUCTIONS: "DELIBERATELY." It is improper, on a trial for murder in the first degree, to instruct the jury that the word deliberately means " a cool state of the blood."

4. ———: ———: USE OF DEADLY WEAPON: INTENTION. Where a dangerous and deadly weapon is used with violence upon the person of another, the intention to take life or to do great bodily harm is a necessary conclusion from the act.

5. **Criminal Practice:** CIRCUMSTANTIAL EVIDENCE: INSTRUCTIONS. An instruction on circumstantial evidence is not authorized where the commission of the crime is shown wholly by direct and positive evidence.

121  137
131  395

121  137
132  359
134  253

121  137
136    3
136  125

121  137
142  482

121  137
a145  249
147  555

121  137
d152   70

121  137
158  605

121  137
162  677

121  137
167  297

121  137
171  1587
174  7689

6. **Criminal Law**: HOMICIDE: LEAVING PLACE OF CRIME: INSTRUCTIONS. Leaving the locality of the homicide does not necessarily create the presumption of guilt; and an instruction on such question should give the accused the benefit of all the explanatory circumstances shown by the evidence.

7. ——: DEFENDANT AS WITNESS: INSTRUCTION. In passing upon the weight to be given defendant's own testimony the jury should be instructed that they "may" not "should" take into consideration his interest in the result.

8. ——: MURDER: STATUTE: INSTRUCTION. On trial for murder in the first degree, the court is not required by Revised Statutes, 1889, section 3461, to instruct on murder in the second degree where the evidence shows only murder in the first degree. (*State v. Hopper*, *71 Mo. 425, approved.*)

9. **Criminal Practice**: DEFENDANT'S OWN TESTIMONY: ARGUMENT OF COUNSEL. Defendant's failure when testifying as a witness to testify as to a particular fact should not be commented on in the argument.

10. ——: JUROR: VOTER. The fact that one is not a voter does not make him incompetent to serve as a juror.

11. ——: JURORS. The fact that persons summoned as jurors, upon their examination in another similar case, showed themselves to be incompetent to serve as jurors in that case, does not render them incompetent in the one on trial.

12. ——: SEPARATION OF JURY. The fact that the jury, on a trial for murder, were at various times during the trial in the main office of a hotel, where persons were passing in and out, is no ground for reversal where it is affirmatively shown that they were not spoken to about the case and that it was not discussed or referred to in their presence.

13. ——: EVIDENCE: REPUTATION OF A WITNESS. One who is acquainted with another's general reputation for truth in the neighborhood in which the latter lives may testify as to his general character.

14. ——: ——: ——. The trial court will not determine by preliminary inquiry whether a witness testifying as to the reputation of another witness has sufficient knowledge of the same to render his testimony competent, but will leave the value of his testimony to the determination of the jury.

15. ——: CONTRADICTING WITNESS: DEPOSITION. Where a part of a deposition of a witness is called to his attention for the purpose of contradicting him, it is no error to restrict the reading in evidence of the deposition to the part so called to his attention.

16. ———: INDICTMENT: MURDER. An indictment for murder which
charges the assault to have been made "feloliously" and "nilfully"
and that defendant gave deceased a mortal "nound," etc., is fatally
defective.

*Appeal from Polk Circuit Court.*—HON. ARGUS COX,
Judge.

REVERSED AND REMANDED.

*T. G. Rechow* and *Upton & Skinker* for appellant.

(1) There was no evidence to warrant an instruc-
tion for murder in the first degree. The killing was
not by means of poison, lying in wait, or in the attempt
to perpetrate any of the five felonies mentioned in
section 3459, Revised Statutes, nor by any means or in
any mode *ejusdem generis* therewith. It is settled law
in Missouri that "where general words follow special
words" in a statute, the latter must be limited to the
same generic character or class of things mentioned in
the specific words. *St. Louis v. Laughlin,* 49 Mo. 559;
*Grumley v. Webb,* 44 Mo. 444; *Sandiman v. Beach,*
Barn. & Cress., 96. (2) The word deliberately was
improperly defined "in cool state of the blood." Am.
and Eng. Encyclopedia of Law, title, Deliberation;
*State v. Lewis,* 74 Mo. 222; *State v. Andrews,* 76 Mo.
101; *State v. Stephens,* 96 Mo. 637; *State v. Avery,* 113
Mo. 475; *State v. O'Hara,* 92 Mo. 59. (3) The court
erred in the matter of giving and refusing instructions.
(4) The decision in *State v. Hopper,* 71 Mo. 425,
construing Revised Statutes, 1889, section 3461, is
unsound and should be reviewed. (5) The court
erred overruling defendant's challenges of the jurors
Waterhouse and Scott. They were not entitled to
vote and were not citizens. (6) The jurors were
improperly permitted to separate during the trial.
(7) The court improperly excluded the deposition

of Ida Wells, Harry Wells, Calvin Stiles, and A. J. Snow, each of said witnesses having admitted giving and signing said deposition. *Pruitt v. Martin*, 59 Mo. 325; 1 Greenleaf on Evidence [5 Ed.], sec. 463; *Norris to use v. Brunswick*, 73 Mo. 258; *Wilkerson v. Eilers*, 114 Mo. 252. (8) The verdict should not be permitted to stand, because of improper remarks of the attorney for the state in his argument to the jury. *State v. Ulrich*, 110 Mo. 365; *State v. Warford*, 106 Mo. 55; *State v. Young*, 105 Mo. 634; *State v. Young*, 99 Mo. 666; *State v. Jackson*, 95 Mo. 623. (9) The motion in arrest of judgment should have been sustained for the following reasons: *First*. Because the indictment does not charge the assault to have been feloniously made, unless the word *"feloliously"* is to be tortured into feloniously. *Second*. Because it does not charge the wounding to have been done feloniously, willfully, deliberately, premeditatedly and of malice aforethought. This is required to make a good indictment. *State v. Feaster*, 25 Mo. 324; *State v. Murdock*, 9 Mo. 739; *State v. Carron*, 51 Mo. 26; *State v. Emerich*, 87 Mo. 110; *State v. Herrell*, 97 Mo. 105; *State v. Clayton*, 100 Mo. 517; *State v. Green*, 111 Mo. 588. The last case cited is decisive of this. *Third*. The indictment is not in the English language as required by statute. *"Feloliously"* can not be tortured into feloniously. *"Nilfully"* is not willfully, and *"nith"* is not with, and *"neapon"* is not weapon, nor is *"nound"* wound. These incongruities make the indictment bad. 1 R. S. 1889, sec. 3240; *State v. Mitchell*, 25 Mo. 420; *State v. Carpary*, 11 Rich. (N. C.) 356; *State v. Cartar*, 2 Harvy (S. C.) 140. *Fourth*. Because the assault is alleged to have been made on Wells, while it is alleged that "Wills" was wounded and killed. "Wells" and "Wills" are not *idem sonans*. They do not mean the same, nor are they of the same derivation; nor have they by long con-

tinued usage, corruption or abbreviation been pro-
nounced the same. *Whelen v. Weaver*, 93 Mo. 432, and
authorities *supra*.

*R. F. Walker*, Attorney General, and *Morton Jour-
dan*, Assistant, for the state.

(1) The court did right in confining the instruc-
tions to murder in the first degree and self-defense.
*State v. Reed*, 22 S. W. Rep. (Mo.) 886; *State v. Turl-
ington*, 102 Mo. 662; *State v. Smith*, 114 Mo. 406; *State
v. Umble*, 115 Mo. 452; *State v. Bulling*, 105 Mo. 204;
*State v. Bryant*, 102 Mo. 24.'   (2) The word "deliber-
ately" was correctly defined.   *State v. Avery*, 113 Mo.
495.   (3) The court did not err in the matter of giving
and refusing instructions.   (4) Defendant's challenges
of the jurors Waterhouse and Scott were properly over-
ruled.   Revised Statutes, 1889, sec. 6060; *State v.
France*, 76 Mo. 682; *State v. Pagels*, 92 Mo. 308.   (5)
Alleged separation of the jury is not sufficient to cause
a reversal.   *State v. Orrick*, 106 Mo. 127; *State v.
Sansone*, 22 S. W. Rep. (Mo.) 617; *State v. Howell*, 23
S. W. Rep. (Mo.) 263. (6) Nor do the remarks com-
plained of by state's attorney as improper require a
reversal.   *State v. Young*, 105 Mo. 634.   (6) The
indictment was sufficient.   Revised Statutes, 1889, sec.
3459.   The mere misspelling of words does not vitiate
it.   (7) This court will not interfere with the verdict
of the jury because of the insufficiency of the evidence
unless there is a total failure of proof, and where the
conclusion must be reached from reading the testimony
that the jury was actuated by prejudice or passion.
*State v. Richardson*, 23 S. W. Rep. (Mo.) 769; *State v.
Herrman*, 22 S. W. Rep. (Mo.) 1072; *State v. Banks*, 22
S. W. Rep. (Mo.) 1079; *State v. Moxley*, 115 Mo. 644;
*State v. Burd*, 22. S. W. Rep. (Mo.) 377; *State v. Jack-*

*son,* 106 Mo. 181; *State v. Orrick,* 106 Mo. 111; *State v. Howell,* 100 Mo. 628; *State v. Lowe,* 93 Mo. 547; *State v. Hicks,* 92 Mo. 432; *State v. Gann,* 72 Mo. 374; *State v. Musick,* 71 Mo. 401; *State v. Hammond,* 77 Mo. 158.

BURGESS, J.—Defendant was convicted of murder of the first degree in shooting with a shotgun and killing one George C. Wells. Deceased had won some money on a horse race, in which defendant claimed to have an interest and over this matter a controversy arose between them in which the homicide occurred.

Deceased had promised to meet defendant at a hotel in the city of Bolivar at night to settle up the matter where defendant waited for him until after 10 o'clock, and, he failing to appear, defendant went to his home, got a single-barreled repeating shotgun, and went out to the fair grounds near Bolivar where the deceased and his wife and child were living in a horse stall; and two young men, one Harry Wells, his stepson, and Calvin Stiles, were occupying another stall adjoining thereto. The fair ground's gate is on the west side of the fair ground. The stall in which Wells was staying is seventy-five yards north of the gate, which is between the stalls and the city. Defendant, in going to the stall where Wells was, went by the gate. When defendant got near the stall, he called Wells up, who put on his clothes, and told defendant to go down to the gate. The fair grounds are inclosed by a tight board fence eight feet high. Defendant was on the outside and Wells on the inside. The gate was locked. Wells and defendant went to the gate, Mrs. Wells, Harry Wells and Stiles followed. Arriving at the gate, Harry Wells at the request of the deceased, unlocked it, when defendant and deceased engaged in a conversation about the money. The gate did not swing upon hinges, but was a sliding gate and hung on rollers.

Defendant said to deceased: "You was not down at the hotel." Deceased said he could not come down because the baby was sick. Defendant said: "Wells, I want to get that money and also an order on Parks." Deceased said: "I won the money fair and square, and I ought to keep it," when the defendant replied: "I have got to have that money to-night." Deceased said: "You had better wait until morning, and we can settle;" when defendant said "that he was not going to wait; that it had to be settled to-night; that he (the defendant) had acted a gentleman, and you (the deceased) have acted a dirty son of a bitch." Immediately upon saying this the defendant fired the shotgun at the deceased—the testimony of Mrs. Wells being that the charge passed near her face, near enough to be felt; that she was standing near the deceased. Wells immediately fired two shots with the pistol which he had taken to the gate with him, when defendant fired the second shot with the shotgun which struck Wells, who staggered and fell, saying: "I have been killed." From the effects of this wound the deceased died within less than an hour.

The defendant immediately ran away in the direction of Bolivar, passing through the town and out to a friend's by the name of Reed, from whom he borrowed a horse and hurried away, going east in the opposite direction from Bolivar, his home, traveling several miles until he reached the house of I. H. Middleton, where he stopped, remaining until the following day, until his arrest. When he reached this place a wound was found in his right leg. It appears that while he was here he sent a boy down to Halfway to ascertain whether or not Wells was dead; that he sent Middleton for an officer, who arrested him and took him back to Bolivar. To the officer who arrested him he said: "Oh, my God, it is awful, * * * * *

I went out to the fair ground to run a sandy on him, but it wouldn't work."

The evening before the night of the homicide, deceased sent to town and got a new pistol and a box of cartridges. When he started to the gate to meet defendant he put a pistol in his pocket. Several persons who saw the shooting testify that there were but three shots fired, while others testified to hearing four different reports of fire arms. Wells shot twice before being killed. The ground where the parties stood at the time of the shooting was bare. One empty shotgun shell was found where defendant stood and wadding for one load was found inside the fair ground.

The court instructed for murder in the first degree and self-defense. The case is in this court on defendant's appeal.

There was ample evidence upon which to predicate an instruction for murder in the first degree. It is not necessary under our statute in order to constitute murder in the first degree that the murder should be committed by means of poison or by lying in wait, or that it shall be committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem but any kind of willful, deliberate and premeditated killing is murder in the first degree. *State v. Stephens*, 96 Mo. 638; *State v. Woods*, 97 Mo. 31; *State v. Howell*, 117 Mo. 307. Defendant's act in preparing himself with the shotgun; going to where deceased was after night; calling him up; getting into a conversation with him and then, according to the evidence on the part of the state, firing the first shot, were, to say nothing of threats, circumstances tending strongly to show premeditation and deliberation, and from which, when taken into consideration with the fact of the killing, a deliberately formed purpose on

the part of the defendant to take the life of the deceased, might well be deduced.

Upon the other hand, according to the testimony of the defendant himself, to the effect that he went to where deceased was, for a lawful purpose, without any intention of doing him harm, but merely to get a settlement out of him and prepared himself with the gun simply for self protection, if true, although he may have fired the first shot, showed an absence of deliberation, and reduced the killing to a less grade of offense than that of murder in the first degree, if not done in self-defense.   Harry Wells, a witness for the state and to the homicide, testified that "both, when defendant called deceased out, and when he talked to him before he shot he seemed to be in a good humor, but just as he fired he seemed to get a little bit angry."   This evidence also tends to show a want of deliberation, and we think especially when taken into consideration with the evidence of the defendant clearly entitled him to an instruction for murder in the second degree, which it was the duty of the court to give whether asked for or not.

If the killing was intentional, but without deliberation, and as it was not done in an attempt to commit a felony, it was murder in the second degree unless justifiable. *State v. Foster*, 61 Mo. 549; *State v. Hudson*, 59 Mo. 135. "To constitute murder in the second degree the elements of willfulness, premeditation and malice aforethought must exist together in the act." Kelley's Criminal Law and Practice, sec. 488; *State v. Lowe*, 93 Mo. 547; *State v. Young*, 119 Mo. 495.

The facts disclosed by the evidence show that the defendant was guilty of murder in the first or second degree, unless justifiable on the ground of self-defense.

VOL. 121—10

There was nothing to reduce the homicide to manslaughter in either degree.

The second instruction given on behalf of the state is assailed because the word deliberately was improperly defined as follows: "The word deliberately as used in the indictment and in the instructions, means a cool state of blood." This instruction is not in accord with the recent decisions of this court. It should have gone further, especially under the facts in the case, and told the jury that deliberately does not mean brooded over, considered, reflected upon, for a week, a day or an hour, but it means an intent to kill executed by a party, not under the influence of violent passion suddenly aroused by some provocation, but in the furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose. *State v. Wieners*, 66 Mo. 13; *State v. Avery*, 113 Mo. 475; *State v. Andrew*, 76 Mo. 104; *State v. Ward*, 74 Mo. 253; *State v. Kotovsky*, 74 Mo. 249; *State v. Ellis*, 74 Mo. 219; *State v. Stephens*, 96 Mo. 638.

The third instruction given on behalf of the state is also complained of because in the first part it omits the word "willfully." That is to say it should have told the jury that he who "willfully" uses upon another in a vital part a dangerous or deadly weapon in the absence of qualifying facts, must know the effect is likely to produce death. We are unable to see how the defendant could have been prejudiced by this instruction, when the fact of the shooting is admitted and justification is the defense. The effect of the defense is to admit that the shooting was willful, that is intentional. The instruction, when read all together, we think presented the law very fairly for defendant.

We do not intend, however, to be understood as holding that it was necessary that the word willfully

should have been used in the instruction, for the law is "that where a dangerous and deadly weapon is used, with violence, upon the person of another, as this has a direct tendency to destroy life, or do some great bodily harm to the person assaulted, the intention to take life, or to do some great bodily harm, is a necessary conclusion from the act." *Rex v. Farrington*, Russ. & Ry. 207; *Commonwealth v. Webster*, 5 Cush. 305.

The fourth instruction on behalf of the state should not have been given. It was not authorized by the evidence. The killing was shown by direct and positive evidence, and did not depend for its proof upon circumstances. It is only where the crime is sought to be shown by facts and circumstances that such an instruction should be given. But the case should not be reversed upon that ground alone.

Immediately after the shooting defendant went to a friend's house near Bolivar, passing by or near his own home, borrowed a horse, and then went to the house of another friend by the name of Middleton, who lived in the country about fifteen miles from the scene of the tragedy, reaching there about 4 o'clock in the morning, where he remained, and where he was arrested by the officers on the following night. On the day before his arrest at night he sent for the officers to come and arrest him. Upon this evidence the court instructed the jury that if they believed from the evidence that defendant fled to avoid arrest, it raised a presumption of his guilt. There does not seem to have been any effort at concealment on the part of the defendant after he took his departure from the fair grounds where the killing occurred. Under the facts as disclosed, the instruction should have directed the jury, in passing upon defendant's purpose in leaving the place of the homicide, whether or not to avoid

arrest, to take into consideration the fact that he made no effort at concealment and the sending for the officers to come and arrest him. It is not every going away from the place of the homicide that raises the presumption of the guilt of the accused and when the facts tend to show that the purpose of going away was not to avoid arrest, the instruction should be so framed as to include all the circumstances, that the defendant may have the benefit of such explanatory facts. *State v. Mallon,* 75 Mo. 355; *State v. King,* 78 Mo. 555; *State v. Ma Foo,* 110 Mo. 7.

The state's seventh instruction has been frequently criticised by this court, in telling the jury that, in passing upon the weight to be given to defendant's testimony, they *should* instead of may take into consideration the fact that he is the defendant in the case and his interest in its result. *State v. Swain,* 68 Mo. 605; *State v. Cook,* 84 Mo. 49; *State v. Young,* 99 Mo. 666. Upon a retrial this instruction should be modified as herein indicated.

'The state's eighth instruction when taken in connection with the fifth instruction given at the instance of the defendant, in regard to self-defense, presented that theory of the case very fairly to the jury, and as favorably to the defendant as the facts and law would warrant. The eighth is unlike the instruction in *State v. Lewis,* 118 Mo. 79, which was condemned by this court, but was in substance approved in *State v. Hicks,* 92 Mo. 431.

Instruction number 8 given by the court of its own motion is vicious in that it calls the attention of the jury to specified facts, is misleading, and in the nature of a comment on the evidence. Similar instructions have repeatedly met with the disapproval of the appellate courts of this state. *St. L., K. & N. W. R'y*

*Co. v. St. L. Stock Yards Co.*, and authorities cited 120 Mo. 541.

We are asked to overrule the case of *State v. Hopper*, 71 Mo. 425, in which it was held that under section 3461, Revised Statutes, 1889 (sec. 1234, R. S. 1879), which provides that, "Upon the trial of an indictment for murder in the first degree, the jury must inquire, and by their verdict ascertain, under the instructions of the court, whether the defendant be guilty of murder in the first or second degree," it is not to be understood as requiring the trial courts, in murder cases, to instruct the jury as to murder in the second degree whether there is evidence to which the instructions could apply or not. This statute only makes it the duty of the jury upon a trial for murder in the first degree, to inquire under the instructions of the court whether the defendant be guilty of murder in the first or second degree, but it does not require the court to instruct for murder in both degrees regardless of the facts and circumstances connected with the homicide. The court must determine from the evidence for what degree or degrees to instruct, and then the jury must inquire and by their verdict ascertain, of what degree, if either, the defendant is guilty under the evidence and instructions. But, upon trial for murder in the first degree, if the evidence shows that defendant is guilty of that offense or nothing, the court is not bound, nor is it its duty to instruct for murder in the second degree. The *Hopper* case was followed and approved in *State v. Umble*, 115 Mo. 453.

The fourteenth instruction asked by defendant and which was refused, presents a mere abstract proposition of law, and the court committed no error in refusing it. The same may be said with respect to defendant's fifteenth refused instruction.

Much of the closing argument of the counsel for the state in his address to the jury was out of place, and should not have been permitted by the court in any case, much less upon a trial when the life of a human being was at stake. *State v. Ulrich*, 110 Mo. 365; *State v. Warford*, 106 Mo. 55; *State v. Young*, 105 Mo. 634; *State v. Young*, 99 Mo. 666; *State v. Jackson*, 95 Mo. 623. Counsel in their argument should be confined to the record, the facts in proof and instructions of the court, but may properly draw, by way of argument, any deduction that naturally flows therefrom.

It was improper to comment on defendant's failure to testify to any particular fact. *State v. Graves*, 95 Mo. 510; *State v. Elmer*, 115 Mo. 401; *State v. Walker*, 98 Mo. *loc. cit.* 118.

Another contention is that Waterhouse and Scott were not competent to serve as jurors, as they were not voters under the statute; they were not citizens. They had been for only about thirty days before the trial citizens of the county of Polk where the trial was had, having moved there from the state of Iowa to permanently reside. Section 6060, Revised Statutes 1889, is as follows: "Every juror, grand and petit, shall be a male citizen of the state, resident of the county * * *" Were they citizens within the meaning of the statute, and, as such, competent jurors? In *State v. France*, 76 Mo. 681, it was held that a person who had been summoned as a juror, who had been living in the county about two months, having come from another state to make it his permanent home, was a competent juror under the statute.

While the right to exercise the elective franchise is the highest evidence of citizenship, a man may be a citizen of the county in which he permanently resides without possessing the necessary qualifications of a voter. "A citizen is a person born in the United

States." 1 Bouvier's Law Dictionary. Another definition is "one who owes to government allegiance, service, and money by way of taxation, and to whom the state in term [turn] grants and guarantees liberty of person and of conscience, the right of acquiring and possessing property, of marriage and the social relations, of suit and defense, and security in person, estate and reputation." 3 Am. and Eng. Encyclopedia of Law, 242. Women are citizens although in this state they can not vote.

In *Amy v. Smith*, 1 Litt. (Ky.) 333, it is held that it is not necessary "even for an adult male to be a citizen, that he should be in the actual enjoyment of all those rights and privileges which belong to a citizen. He may not only not be in the actual enjoyment of those rights and privileges, but he may even not possess those qualifications, of property, of age, or of residence, which most of the states prescribe as requisites to the enjoyment of some of their highest privileges and immunities, and yet be a citizen."

In *Minor v. Happersett*, 21 Wallace, 162, it was held that women may be citizens, that they are persons and by the fourteenth amendment of the constitution of the United States, "All persons born or naturalized in the United States and subject to the jurisdiction thereof" are expressly declared to be "citizens of the United States and of the state wherein they reside." *Robinson's case*, 131 Mass. 376.

From these considerations it seems clear that Waterhouse and Scott were competent to sit as jurors upon the trial of this cause.

The fact that the law gives the defendant forty-eight hours in which to make his challenges, after receiving the list of forty qualified jurors, for the purpose of enabling him to ascertain their habits, standing, and predisposition in order the more intelligibly to

make his challenges and select a jury, does not alter the law which we must accept as we find it. The jurors were clearly competent under the law.

There is no merit in the point as to the incompetency of the jurors Hint and Arnold. They were clearly competent. The fact that they, upon their examination, touching their qualifications as jurors in another similar case showed them to be incompetent to serve as jurors in that case, was no evidence that they were not competent to serve in this.

A still further contention is that the jury were not kept in a private place during the trial as required by law. It is shown by the affidavit of several persons that the jury were at various times in the main office of the hotel, a public place where persons were passing in and out, but as it is affirmatively shown by affidavits of the jurors themselves, and other persons in whose charge they were, that they were not spoken to about the case, that it was not discussed or alluded to in their presence, the judgment should not be reversed on that ground. *State v. Orrick*, 106 Mo. 111; *State v. Howell*, 117 Mo. 307; *State v. Avery*, 113 Mo. 475.

There was no error committed in permitting the witness Boas to testify to the standing and reputation of the witness Snow. He answered that he was acquainted with his general reputation for truth in the neighborhood in which he lived, and that was all that was necessary in order to qualify him to testify to his general character.

With respect to Samples, while he testified that he had only known Snow about a month, he also stated that he was acquainted with his general reputation for truth in the neighborhood in which he then lived, which was only a few months before the trial, and that it was good. The court will not determine by a preliminary inquiry whether the witness had sufficient

knowledge of the fact to enable him to testify, but will leave the value of his testimony to be determined by the jury. 1 Greenleaf on Ev., section 461; *State v. Pettit*, 119 Mo. 410. This, of course, has reference to the length of time of the knowledge of the witness's character by the one testifying with respect to it.

There was no error in excluding the depositions of Ida Wells, Harry Wells, Calvin Stiles and A. J. Snow, offered for the purpose of contradicting them. There was no objection made to reading that part of their depositions to which their attention had been called in their examination, but counsel for defense insisted on reading all the depositions, to which the court properly sustained an objection. The facts are unlike those in *Wilkerson v. Eilers*, 114 Mo. 245; *State v. Talbott*, 73 Mo. 358; *Prewitt v. Martin*, 59 Mo. 325; 1 Greenleaf on Ev., sec. 462; *Romertze v. Bank*, 49 N. Y. 577. See, also, *Berthold v. O'Hara*, ante, p. 88.

The indictment, as copied into the record in this case, is manifestly bad, because it does not charge the assault to have been feloniously made. It uses *"feloliously," "nilfully," "neapon"* and *"nound"* where the words "feloniously," "wilfully," "weapon" and "wound" should be used. Leaving off the formal part, it is as follows:

"The grand jury for the state of Missouri, summoned from the body of Polk county, empannelled, charged and sworn, upon their oaths present, that William Fairlamb, late of the county aforesaid, on the fifteenth day of October, 1892, at the said county of Polk, state aforesaid, in and upon the body of one George C. Wells, then and there being *feloliously, nilfully*, deliberately, premeditatedly and of his malice aforethought did make an assault and with a deadly and dangerous *neapon*, to wit, a shotgun, then and there loaded with gunpowder and leaden balls which

he, the said William Fairlamb, in his hand then and there had and held at and against him, the said George C. Wells, then and there feloniously on purpose and of his malice aforethought, *nilfully* deliberately and premeditatedly did shoot off and discharge and with the shotgun aforesaid and the leaden balls aforesaid then and there feloniously on purpose and of his malice aforethought *nilfully*, deliberately and premeditatedly did shoot and strike him, the said George C. Wells, giving to him, the said George C. Wells, then and there with the dangerous and deadly *neapon*, to wit, the shotgun aforesaid and the gunpowder and leaden balls aforesaid, in and upon the right groin of the said George C. Wells, one mortal *nound* of the breadth of one inch and of the depth of six inches, of which said mortal *nound* the said George C. Wells, from the fifteenth day of October, in the year aforesaid, until the sixteenth day of October, in the year aforesaid, at the fair ground in the county aforesaid, did languish and languishing did live, on which sixteenth day of October, in the year aforesaid, the said George C. Wells, at the fair ground, in the county aforesaid, of the mortal *nound* aforesaid, died, and so the grand jury aforesaid, upon their oath aforesaid, do say that the said William Fairlamb, him, the said George C. Wells, in the manner and by the means aforesaid, feloniously, *nilfully*, deliberately, premeditatedly and of his malice aforethought, did kill and murder, against the peace and dignity of the state."

Hawkins says: "That in an indictment nothing material shall be taken by intendment or implication." 2 Hawk. P. C., ch. 25, sec. 61. *State v. Meyers*, 99 Mo. 107. In *State v. Green*, 111 Mo. 585, the court says: "It is still necessary to allege every substantive fact which the state must prove, in order that the defendant may know 'the nature and cause of the accusation'

against him." In all indictments for felony it must be charged that the offense was done with a felonious intent. *State v. Clayton*, 100 Mo. 516; *State v. Herrell*, 97 Mo. 105; *State v. Emerich*, 87 Mo. 110; *State v. Deffenbacher*, 51 Mo. 26. The motion in arrest should have been sustained. The judgment should be reversed and the cause remanded to be proceeded with in accordance with the views herein expressed. All concur.