PHILLIPS, Respondent, v. TOWLER'S ADMINISTRATORS, Appellants.

1. In an action, under section 35 of article 9 of the act concerning crimes and punishments (R. C. 1845, p. 414), against the owner of a slave to recover damages sustained through the burning of a building, &c., by such slave : *held*, that a confession by the slave of the burning is inadmissible in evidence.
2. It is also incompetent in such a case to show that the remark was made in the presence of the owner of the slave, that the slave had burned the building and had confessed it, and that he (the owner) had made no reply or denial.
3. An action under section 35 of article 9 of the act concerning crimes and punishments (R. C. 1845, p. 414,) against the owner of a slave, will survive against his administrators.

*Appeal from Lewis Circuit Court.*

This was an action against Edward Towler to recover compensation for injuries sustained in consequence of the act of a slave of defendant in setting fire to and burning a stable, &c., belonging to plaintiff. The defendant dying, the suit was revived against his administrators. On the trial to prove that the slave had set fire to plaintiff's stable, certain confessions made by her were admitted in evidence against the objection of defendant's counsel. A witness also testified as follows : " Mr. Robert Towler, son of Edward (the original defendant), entered the room where Mr. Edward Towler and I were, and, with a smile on his countenance, said, ' does it not beat any thing in the world? that negro burnt Phillips' stable, and has confessed it.' Mr. Edward Towler made no reply ; seemed to be cut

down, and went out of the room." Defendants excepted to the admission of this testimony. Defendants bring the case to this court by appeal.

*Pratt* and *Lipscomb*, for appellants.

*A. H. Buckner*, for respondent.

LEONARD, Judge, delivered the opinion of the court.

The slave's confessions were improperly admitted. They were mere second-hand evidence, and of the most exceptionable character. Such statements, if made by persons the most trustworthy, and under circumstances furnishing the strongest corroboration of their truth, could not be received. Legal evidence consists in facts sworn to by witnesses from their own personal knowledge, and excludes all *personal information* derived from others, however worthy of credit they may be. Here, however, the person from whom the information came was a slave, one forbidden by law to appear as a witness for or against a white person. And this principle of exclusion, which has been adopted into our written law, is grounded on the degraded condition of this class of persons, and the interest they may have to fabricate falsehoods and conceal the truth. It came from the Roman law, and has prevailed in all the European colonies in America, wherever slavery has existed. It is acted on in all the American slave states, although no enactment to that effect exist, and may be considered the customary law applicable to the institution of slavery. Where African slavery exists, the exclusion has generally extended also, as under our statute, to all individuals of the slave race, whether bond or free. (1 Har. & McHen. 562; White v. Helmes, 1 McCord, 430; Stephens on West India Slavery, 168.)

The attempt to bring these statements within the case of Fackler v. Chapman, (20 Mo. 252,) can not prevail. There, goods had been recently stolen and concealed, and the information given by the defendants as to the place of concealment, connected with the fact that they were there found, was received to establish their guilty knowledge, and in this manner connect

them with the theft.  No credit whatever was given to their statement as a mere narrative of facts, and if the testimony had stopped short there, these statements of themselves would have been clearly inadmissible.  In the present case, however, faith must be given to the girl's story as such, or the testimony avails nothing ; and the fact that it was corroborated in some of its particulars—for instance, as to the particular corner of the stable in which the fire was put, which is relied upon for the purpose of rendering it complete evidence—can not, it is very manifest, have any such effect.

The court erred also in allowing the remarks of Robert Towler, made in the presence of the intestate, to go to the jury. They were to the effect that " the girl had burned plaintiff's stable, and confessed it." The intestate, it seems, made no reply, and this was received as an admission of the fact on his part, implied from his supposed acquiescence in what was thus said in his hearing.  In regard to these admissions inferred from acquiescence in the verbal statements of others, on the maxim "*Qui tacet consentire videtur*," it has been most justly remarked, that nothing can be more dangerous than this kind of evidence, and that it ought always to be received with caution, and never admitted at all unless the statements be of that kind that naturally call for contradiction—some assertion made to the party with respect to his rights, which by his silence he acquiesces in.  (Moore v. Smith, 14 S. & R. 392).  A distinction is taken between declarations made by a party interested and a stranger, and it has been determined, that, while what one party declares to the other, without contradiction, is admissible evidence, what is said by a third person may not be so (Child v. Grace, 2 Car. & Payne, 193) ; and we are also told that the silence of the party, even when the declarations are addressed to himself, is worth very little as evidence, when the party has no means of knowing the truth or falsehood of the statement. (Hayslep v. Gymer, 1 Ad. & El. 162–5.)  The allowance of the proof here was palpably wrong.  The substance of the remark was, that the girl had confessed that she burned the sta-

ble, and was not understood by the father as an assertion on the part of the son of the girl's guilt. Thus understood, it called for no reply. The father, no doubt, believed that the girl had made the confession stated by his son, and his silence, if it admitted of any thing, was only an admission to that extent, and can not, without palpable injustice to him, be construed into an admission that his slave was guilty of the fact.

We remark, in conclusion, that the cause of action clearly survived against the estate of the deceased owner, under the provisions of the statute on this subject. (R. C. 1845, p. 76, § 25, and p. 414, § 35.)

The judgment is reversed, and the cause remanded.