THE STATE ex rel. FLAVEL B. TIFFANY et al. v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals.

In Banc, February 9, 1916.

1. **CERTIORARI: Quashing Judgment of Court of Appeals.** The Supreme Court has constitutional authority to quash the judgment of a court of appeals in any case wherein its judgment has been the result of its refusal to follow the last previous ruling of the Supreme Court upon any matter of law or equity involved in the case.

2. ————: ————: **Statement of Facts.** Upon *certiorari* directed to a court of appeals, the Supreme Court can confine itself to the facts found by that court; this, upon the presumption that, where that court has undertaken to state the facts, it has stated all the facts of record upon the question in issue.

3. **EVIDENCE: Admission: Undenied Statement of Another.** A defendant cannot be charged with an undenied damaging voluntary statement made by a party out of his presence, when to deny it would require him to shout his denial up a stairway to a woman in the employ of his co-defendant.

*Held,* by WALKER, J., dissenting, that visual and immediate physical presence is not necessary to authorize the appli-

cation of the rule which renders testimony in regard to a damaging statement competent, and construes silence, under a proper condition, to be an admission of the truth of such statement; hearing and understanding, and not mere proximity, are the tests of the admissibility of such testimony.

4. ————: ————: ————: Silence: Impertinence: Personal Security: A failure by a defendant to reply to a damaging statement cannot be held to be an admission of its truth and is not admissible in evidence:   first, if made under such circumstances as affords him no opportunity to reply, for instance, if the denial must be shouted up a stairway;  second, if it is a voluntary statement made by the office girl or other mere employee of a co-defendant, who may have adverse interests, and therefore not demanding a denial;  third, if voluntarily made by a stranger (that is, a person not a party to the action) and, therefore, an impertinence;  and, fourth, if made under such circumstances that the defendant, as a matter of personal security, has a right to ignore it.

*Held,* by WALKER, J., dissenting, that, where two physicians had offices on different floors of the same building and the one below had treated the patient of the other, and when the officer came to serve the summons on them in the action for civil damages by the patient, the one below called up the stairs to the office girl of the other, to know if she had a record in the case, and she replied that she had and that the patient was the school teacher into whose eye he had dropped iodine and put it out, the answer was not a voluntary statement, nor an impertinence, but made by one whose authority to give it was recognized by the physician, and should have been admitted as evidence of his acquiescence therein.

5. ————: ————: Probative Force. A failure to deny or to reply to a voluntary statement made by a stranger to the action to a defendant, is the weakest of all evidence in probative force, and is not admissible as an admission of its truth except when made under such circumstances as point clearly to the necessity for a reply.

## Certiorari.

RECORD QUASHED.

*Fred A. Boxley, Denton Dunn* and *Scarritt, Scarritt, Jones & Miller* for relators.

(1) The legal relation of Dr. Howard to plaintiff, as well as to Dr. Tiffany, upon this record was

that of an independent contractor and therefore, the demurrer of Dr. Tiffany should have been sustained on that ground. Plaintiff's evidence shows Dr. Tiffany never treated her nor was he present at such treatments. Hillsdorf v. St. Louis, 45 Mo. 95; Myers v. Holborn, 58 N. J. 193; Keller v. Lewis, 65 Ark. 578; Pearl v. Railroad, 176 Mass. 177; Hagarty v. Railroad, 100 Mo. App. 424. (2) The ruling of the Court of Appeals justifying the admission of the testimony of the deputy sheriff as to Dr. Howard's momentary silence, his lack of an instantaneous and smart repartee, to the remark of a young girl upstairs, and giving to it the probative effect of an admission on the part of Dr. Howard that he put iodine in plaintiff's eye and thereby put it out, is grievous error and runs counter to the decisions of this court. State v. Hamilton, 55 Mo. 520; Phillips v. Towler, 23 Mo. 401; State v. Young, 99 Mo. 666; Bank v. Nichols, 43 Mo. App. 385; Adams v. Railroad, 74 Mo. 553; Wojtylak v. Coal Co., 188 Mo. 260; Greenleaf on Evidence (16 Ed.), sec. 198; Larry v. Sherburne, 2 Allen (Mass.), 34; Whitney v. Holton, 127 Mass. 527; Carter v. Buchannon, 3 Ga. 513; Newman v. Commonwealth, 28 Ky. L. Rep. 81.

*W. M. Williams, Atwood & Hill* and *Park & Brown* for respondents.

(1) We are confronted with a proposition which the Court of Appeals was not called upon to decide, and as to which there is no ground of conflict between the decisions of the Court of Appeals and this court. In the brief filed in the Court of Appeals the point was not raised that Dr. Howard was an independent contractor or that Dr. Tiffany was not plaintiff's physician. We will allow the defendants to answer this question themselves. Dr. Tiffany told plaintiff that plaintiff was in fact his patient. Dr. Howard testified that he assisted Dr. Tiffany when the latter was in

the city and attended to his practice when he was out of the city. At the time of these occurrences in February, 1909, he says he was employed upon a salary by Dr. Tiffany and acted for him in his stead during his absence. Dr. Tiffany says: "My assistant, Dr. Howard, and the office girl gave me a little history of the case." The Court of Appeals finds that Dr. Howard was merely the agent of Dr. Tiffany, and this is strictly in accord with Logan v. Weltmer, 180 Mo. 332, where it is held that a physician is liable for the negligence of his salaried assistant. (2) The testimony of deputy sheriff Wofford was admissible. There is no conflict whatever between the ruling of the Court of Appeals and either of the cases cited by defendant. The Court of Appeals could not have ruled otherwise in view of rulings in similar cases, viz., State v. Lovell, 235 Mo. 353; State v. Burk, 234 Mo. 578; State v. Walker, 78 Mo. 388; Nelson v. Nelson, 90 Mo. 463. This court has never in similar circumstances excluded the implied admission, but has always held that where a declaration affecting a party's interest has been made to such party by one immediately concerned upon a matter of which the party has personal knowledge the party's silence is an acquiescence implying an admission of the truth of the declaration. It is no objection that the admission may be in the form of a conclusion of fact. Sparr v. Wellman, 11 Mo. 230; Brookfield v. Drury College, 139 Mo. App. 339. Where a party is charged with a wrong, under circumstances which would naturally require an innocent man to speak, his silence is taken as an implied admission. There are no decisions of this court distinctly on the point, but we call attention to the following decisions of courts of high authority: Cross Lake Logging Co. v. Joyce, 83 Fed. 991; Given v. Railroad, 24 Ky. L. R. 1796; Sumner v. Gardiner, 184 Mass. 433; Va. Chem. Co. v. Kirven, 130 N. C. 161;

In re Snowball's Estate, 157 Cal. 310. Implied admissions in the nature of conclusions were received in Puett v. Beard, 86 Ind. 107; Oliver v. Railroad, 43 La. Ann. 804; Holston v. Railroad, 116 Ga. 658; Smith v. Duncan, 181 Mass. 435. The declaration of Rose McAllen was made in the ordinary course of her business and duty to defendant Tiffany and was receivable against him. Miss McAllen, the declarant, was in charge of the office of defendants. She was the medium of communication between plaintiff and Dr. Tiffany. She received the plaintiff, introduced her to Dr. Howard, made the notations in the book, and kept the records of the office. In other words, she was the recording officer of defendants' business. Defendant Tiffany, the owner of the business and the prospective recipient of a healthy fee, was not personally attending to his practice but was off on a pleasure trip, leaving Dr. Howard to attend to the professional work, and Miss McAllen to keep the records and attend to the business. On Dr. Tiffany's return and the consultation which occurred February 16, 1909, it was Miss McAllen's record which was examined. After a prima-facie agency has been shown, declarations of the agent made in the prosecution of the agency are admissible against the principal. Peck v. Ritchey, 66 Mo. 114; Northrup v. Insurance Co., 47 Mo. 435; Phillips v. Railroad, 211 Mo. 419; Hilbert v. Railroad, 20 Idaho, 54; Railway Co. v. Rhodes, 121 Pac. 769; Anvil Mfg. Co. v. Humble, 153 U. S. 540; Hall v. Herter Bros., 90 Hun, 280, 35 N. Y. Supp. 769; Express Co. v. Harris, 120 Ind. 73; Transportation Co. v. Leyson, 89 Ill. 43; McGowan v. Supreme Court, 104 Wis. 173, 185.

GRAVES, J.--Original action in *certiorari*, the purpose of which is to have quashed and for naught held, the judgment of the Kansas City Court of Appeals,

affirming a judgment of the circuit court of Jackson county in the case of Mary Coffey v. Flavel B. Tiffany and Joseph W. Howard. In the circuit court the judgment was originally for $10,000, but for some reason not made clear by the record, the plaintiff *voluntarily* remitted principal and interest so as to make the judgment after *remittitur* just $7500. The appeal thereupon went to the Kansas City Court of Appeals. This is one of a series of cases in *certiorari* pending in this court about the time the case of State ex rel. v. Robertson, 264 Mo. 661, was set for hearing. As a result, in the Robertson case, supra, we were accommodated with a wealth of briefs in an insignificant case, and among these were briefs and arguments from counsel in the case at bar. These of course went largely to the question of the jurisdiction of this court. We state this because we have in this case extended briefs upon the same question. The Court of Appeals affirmed the judgment of the circuit court, and in so doing it is charged that such court has ignored the last rulings of this court upon several questions therein involved. These questions we can take, so far as necessary, in proper order. The facts pertinent to each question had best be stated therewith.

I. Since the case of State ex rel. v. Broaddus, 238 Mo. 189, it has been the custom of counsel to attack that ruling at each change in the membership of this court. The briefs upon the question of jurisdiction in the case at bar were prepared at a time when a very vigorous attack was being made upon the right of this court to quash the record of the Court of Appeals in a case wherein their pronouncement upon a given question of equity or law was at variance with the last previous rulings of this court. This virulent attack was the occasion of bringing into prominence the very small matter in issue in case of State ex rel. v. Robertson, 264 Mo. 671.

**Jurisdiction.**

266Mo.39

In that case the question of the right of this court to thus superintend the several courts of appeals, was fully, and we trust finally, settled. With the ruling in the Robertson case, supra, we are satisfied, and this question as argued in the briefs and oral arguments in the case at bar is ruled against the respondents. We hold, as we did, in the Robertson case, supra, that this court has the constitutional authority to quash the judgment of the Court of Appeals in any case wherein such judgment has been the result of a refusal by such Court of Appeals to follow the last previous ruling of this court upon any matter of law or equity involved in such case. The members of this court may differ and be divided upon what we will consider in determining whether or not the Court of Appeals has failed to follow our last previous rulings, but we are firmly fixed upon the question of our constitutional authority to act, and in the interest of harmony and unanimity of opinions in this State, it would be almost criminal negligence for this court to decline to use the authority expressly given, and perform the duty thus imposed. We can add nothing upon this question to what was said in the Robertson case, supra, and pass the question with a re-affirmance of the doctrine announced in that case.

II.   In the disposition of this case, as I see the law, it will not be necessary to tread upon any **Statement of Facts.** disputed grounds. In other words, we can confine ourselves to the facts found by the Court of Appeals in its opinion. By this we mean that where the court has undertaken to state the facts, we can presume that it has stated all the facts of record upon the question in issue. This we can do because the court is presumed to have done its full duty. It may be a violent presumption (in fact), and a glance at the record in this case has convinced us of the violence of the presumption in the particular case,

as we shall point out later. However, within well defined legal rules, we are justified in saying that the presumption is that the Court of Appeals has fully stated the facts upon the question involved.

During the course of the trial, the process server, who served the summons upon Dr. Howard, was permitted to testify to facts which thê trial court considered tantamount to an admission of negligence by Dr. Howard. This evidence was duly objected to by both defendants. It was excluded as to Dr. Tiffany and admitted as against Dr. Howard. The opinion thus describes the facts: "She brought this suit August 18, 1909, six months after the injury. The summons was served by a deputy sheriff who was introduced as a witness by plaintiff, and testified to what occurred at defendant's office when Dr. Howard was served. Dr. Tiffany was not in and after the papers were served on Dr. Howard, he and the witness went down stairs (the offices were on two floors), when Dr. Howard called upstairs to the clerk who had received plaintiff, and asked if she 'had a record of the Mary Coffey case.' The clerk answered that she had and that plaintiff 'was the school teacher that he dropped iodine in her eye and put it out.' Dr. Howard, who was standing by the side of witness, said nothing. Each defendant objected to this testimony and the court sustained the objection of Dr. Tiffany, but overruled that of Dr. Howard."

*Admission by Silence.*

From the fact that this finding of facts does not say that the young woman spoken to was in the view and presence of Dr. Howard, and the process server, Mr. Wofford, we are justified in the conclusion that she was not in the actual presence of either, at the time. We said that the actual records in a case might make it appear to be a violent presumption to say that we would presume that the Court of Appeals had stated

all the facts. As demonstrating that matter, and for no other purpose, we quote from the actual evidence of the process server:

"Q. You went up there to serve the writ at Dr. Tiffany's office? A. Yes, sir.

"Q. Who did you see there? A. Dr. Howard, at the first. Dr. Tiffany was not there.

"Q. Dr. Tiffany was not there the first time? A. No.

"Q. What did you say to Dr. Howard, or what did you give him, if anything? A. I served the petition, and the writ attached.

"Q. Who else was there? A. Some young woman, acting as an office girl, or typewriter, or something, or bookkeeper.

"Q. Do you know her name? A. I heard Dr. Howard call it. It seems to me, 'Rose,' 'Miss Rose,' referred to her as 'Miss Rose.'

"Q. Miss Rose McAllen? A. I don't believe I heard him say 'Miss McAllen,' but 'Miss Rose.'

"Q. Did you give Dr. Howard a copy of this summons and the petition? A. I did.

Q. What, if anything, did he say when you gave it to him?

"Mr. Scarritt: We object on behalf of Dr. Tiffany, as secondary evidence, as hearsay, and not as tending to sustain any of the issues raised by the pleadings, and irrelevant and immaterial.

"The Court: The objection, so far as Dr. Tiffany is concerned, will be sustained.

"To which ruling of the court the plaintiff at the time excepted and still excepts.

"Mr. Scarritt: We make the same objection on behalf of the defendant, Dr. Howard.

"The Court: Objection overruled.

"To which ruling of the court the defendant at the time excepted and still excepts.

"A.  He didn't say anything to me.

"Q.  Did he say anything to anybody else?  A. Not at that time.  After we started to go downstairs he, the doctor, either called the young lady or spoke—

"Mr. Scarritt (interrupting): Same objection to this conversation that is now in process of being made on behalf of Dr. Tiffany, that we made before.

"The Court: The same ruling as before.

"To which ruling of the court the plaintiff at the time excepted and still excepts.

"Mr. Scarritt: We make the same objection on behalf of the defendant, Dr. Howard.

"The Court: Same ruling as before as to Dr. Howard.

"To which action and ruling of the court the defendant at the time excepted and still excepts.

"A.  (Continuing)  After we started downstairs, he either called to her up the stairway or through a speaking tube, and asked her if she had any record of the Mary Coffey case, and—shall I go ahead?

"Q.  What did she say to him?

"Mr. Scarritt: We object on behalf of the defendant, Dr. Tiffany, as being secondary evidence, and a declaration not made by the defendants or either of them, or by anyone having any personal knowledge of the transaction referred to; it calls for a statement that was impertinent, under the circumstances, and it deserves no notice—that is on behalf of Dr. Tiffany.

"The Court: It may be understood you will renew your objections to all of this testimony, and that I will make the same ruling, without you doing so.

"Mr. Scarritt: This is a fuller objection, it is calling for a different conversation than the former question—that is the reason we make the objection now.  It is calling for a statement, as I understand it, through a speaking tube.

"(Question read.)

"The Court: Where was Dr. Howard?

"The Witness: Standing on the steps.

"The Court: Did you see him?

"The Witness: Yes, I was right alongside of him.

"The Court: Did you hear her answer?

"The Witness: Yes.

"The Court: Objection overruled.

"To which ruling of the court the defendants at the time excepted and still except.

"A. He asked her if she had a record of the Mary Coffey case. She said she had; that that was the school teacher that he dropped iodine in her eye and put it out."

It will be noted that the process server was not definite whether the alleged conversation was held by talking to the girl up the stairway or through a speaking tube. The "speaking tube" portion of the facts is omitted by the Court of Appeals and in a close case might be of much importance, but with the view that we have of the disclosed facts in the opinion, it is not so material in the instant case. We have already said we can presume that the court found all the facts in its opinion, and from that finding, as it does not specifically appear that the girl was in the actual presence of Dr. Howard and the process server, we will take it as a fact that she was not. The facts found show the girl to have been in the office, and they do not show her to have changed positions after the service of process and this alleged conversation. By the facts found, the girl being in the office and the alleged conversation being on the stairway, the girl could not well have been in the actual presence of either Dr. Howard or the process server. Of course, the actual testimony of the witness makes this point clearer. This testimony, however, we have cited for illustration rather than use.

We start then with the proposition that it does not appear from the facts found in the opinion that the girl, who made the statement sought to be fastened upon Dr. Howard, as an admission, was in the actual presence of either Dr. Howard or the process server, Wofford, at the time. This is material in measuring the duty of Dr. Howard as to a denial of this voluntary statement of the girl. The question asked by Dr. Howard did not call for such an answer, and hence we say that the statement charged to the girl (and denied by her) was purely voluntary, and in no way called for by the question. Dr. Howard only asked if the girl in Tiffany's office had a record of the case. It should be borne in mind that Dr. Howard was only treating this patient for Dr. Tiffany, in his absence. In other words, that she was Dr. Tiffany's patient and the history of the case had been preserved by Dr. Tiffany's office girl. In other portions of the opinion it appears that this office girl arranged with plaintiff for Dr. Tiffany, as Dr. Tiffany's patient. *Vide* plaintiff's statement of the arrangement made over the telephone as found in the opinion.

Under these facts the questions are (1) was there error in the admission of this testimony as tending to show that Dr. Howard admitted his negligence, and (2) was such ruling violative of previously pronounced doctrines of this court upon like or similar questions? We have no hesitancy in saying that the admission of this evidence was error, nor have we any doubt that its admission contravenes the announced law of this court, as well as other courts. Under the facts and rules of law, Dr. Howard was under no obligations to engage (at long range and with a party out of his sight and presence) in a dispute with the girl over a voluntary statement of hers, and one wholly irresponsive to the question asked. She was not asked what the record would show but merely if she had kept a

record. The Court of Appeals gets mixed upon the matter. They quote from the evidence and say that Dr. Howard asked the girl if she "had a record of the Mary Coffey case." This is the question that the Court of Appeals says he asked and this is borne out by the actual record. In undertaking to reason out a duty upon the part of Dr. Howard to deny this voluntary statement of the girl, that learned court later on says: "The question asked by Dr. Howard called for information kept by her in the course of her employment for the benefit and future use of her employers, and her answer was in direct response to that question."

Here the argument of the court misstates the facts it had previously found, and upon this misstatement of the facts the competency of this evidence is made to turn. Howard at no time asked for the contents of the record and his question in no way called for any such reply.

We do not deny the rule that under given circumstances an admission may be implied from silence, but what we do say is that no court has gone so far as to hold that a man must deny a mere voluntary statement made by a party out of his presence, when to deny it would require him to hurl his denial to a woman out of his presence and in the employ of a co-defendant. And further when he would be required to hurl his denial up a stairway. In State v. Hamilton, 55 Mo. l. c. 522, it is said: "It is not in all instances, where declarations are made in the presence and hearing of a person, that those declarations can be given in evidence against him; they frequently call for no reply and sometimes they are impertinent and deserve no notice."

In State v. Young, 99 Mo. l. c. 674, one Craft said to Wilson, the marshal having Young, the defendant, in custody, in the presence of Young, "You have got

your right man; you don't have to go any farther to get him." The evidence was held incompetent, and among other things the court said: "The defendant had the right, therefore, to treat the remark of Craft as a mere impertinence and best answered by silence." So in the case at bar. The girl was not in the presence of Howard, and he was in no position to enter into any controversy with her. Her remark was a mere voluntary one, not called for by the question asked, and above all was made by the employee of his co-defendant. It amounted to a charge of criminal negligence, it is true, but because Dr. Howard, situated as he was, chose to treat such a charge, coming from that particular source, with silent contempt, should not permit such remarks to go in as evidence of an admission of guilt.

In State v. Young, supra, this court has cited with approval the case of Commonwealth v. Kenney, 12 Metc. (Mass.) 235. In that case Chief Justice SHAW, with his usual analytical mind, thus states the rule: "If a statement is made in the hearing of another, in regard to facts affecting his rights, and he makes a reply, wholly or partially admitting their truth, then the declaration and the reply are both admissible; the reply, because it is the act of the party, who will not be presumed to admit anything affecting his own interest, or his own rights, unless compelled to do it by the force of truth; and the declaration, because it may give meaning and effect to the reply. In some cases, where a similar declaration is made in one's hearing, and he makes no reply, it may be a tacit admission of the facts. But this depends on two facts: First, whether he hears and understands the statement, and comprehends its bearing; and, secondly, whether the truth of the facts embraced in the statement is within his own knowledge, or not; whether he is in such a situation that he is at liberty to make any reply; and

whether the statement is made under any circumstances, and by such persons, as naturally to call for a reply, if he did not intend to admit it. If made in the course of any judicial hearing, he could not interfere and deny the statement; it would be to charge the witness with perjury, and alike inconsistent with decorum and the rules of law. *So, if the matter is of something not within his knowledge; if the statement is made by a stranger, whom he is not called on to notice; or if he is restrained by fear, by doubts of his rights, by a belief that his security will be best promoted by silence; then no inference of assent can be drawn from that silence.*"

This approved rule by this court contains several ideas of importance here. It shows that a person is not always called upon to speak. First, if the party making the statement is a stranger, he is not called upon to reply. The word stranger as here used has reference to a party other than a party to the suit or controversy. There is also the further idea that the party need not act if he thinks his security will be best subserved by silence. In other words, the question of whether a person is called upon to make a reply is wholly dependent upon the circumstances, and we reiterate that neither this court, nor any other court, has ever held that it was required of a person charged with an act to answer a voluntary statement of the employee of a co-defendant, when such employee was not even in the presence of the party, and when to reply he would have to hurl his reply up a stairway to a woman in the office of a co-defendant, whose interest might be diverse to him.

In State v. Glahn, 97 Mo. l. c. 694, it is said: "The statement of the witness Lon Wheeler that he thought the man could be found in the field who committed the murder, should be excluded. It is true this statement was made in the presence of defendant,

but it was not such a statement as called for action or reply on the part of defendant. Silence did not therefore amount to an admission. [1 Greenl. Ev., sec. 197.]'' We cite this because it approves the rule stated in an older volume of Greenleaf on Evidence. It approves that rule, and makes it the rule of this court.

Section 197 of volume 1 (14 Edition) of Greenleaf on Evidence, so far as material, reads: *"Silence and acquiescence*. Admissions may also be implied from the acquiescence of the party. But acquiescence, to have the effect of an admission, must exhibit some act of the mind, and amount to voluntary demeanor or conduct of the party. And whether it is acquiescence in the conduct or in the language of others, it must plainly appear that such conduct was fully known, or the language fully understood by the party, before any inference can be drawn from this passiveness or silence. (b) The circumstances, too, must be not only such as afforded him an opportunity to act or to speak, but also as would properly and naturally call for some action or reply, from men similarly situated.''

This rule emphasizes the matter of the circumstances of the alleged statement. This is one of the crucial questions in this case—were there circumstances such as to call for a reply? We have outlined and the Court of Appeals have outlined them. The Court of Appeals wholly disregarded this rule as to the surrounding circumstances, when they held that Dr. Howard had to herald up a stairway a reply to a voluntary statement made by the employee of a co-defendant, and especially the rule which allows such a person to consider his own personal security in refusing to make a reply.

In one of plaintiff's briefs in the case, it is stated that Dr. Howard stated in evidence that he used *dionin*

in plaintiff's eye, and that *dionin* would produce congestion. If the girl did answer down the stairway, it may have been that Dr. Howard understood her to say *dionin* and not *iodine,* as the process server claims to have understood it. We mention this only as a circumstance in the case, which circumstances should be considered with others before a court should permit such evidence to stand as tending to show an admission of negligence. The opinion shows that the very record book of which Dr. Howard made inquiry was put in evidence, and that it corroborated Dr. Howard as to the drugs used.

Our learned brothers of the Court of Appeals failed to follow the rule approved by this court in the cases, supra, when they said that this evidence was competent under the circumstances and facts which they have set out in the opinion.

In the very early case of Phillips v. Towler's Administrators, 23 Mo. l. c. 403, we recognized the extreme danger in admitting such testimony as was admitted in this case. In that case we said: "The court erred also in allowing the remarks of Robert Towler, made in the presence of the intestate, to go to the jury. They were to the fact that 'the girl had burned plaintiff's stable, and confessed it.' The intestate, it seems, made no reply, and this was received as an admission of the fact on his part, implied from his supposed acquiescence in what was thus said in his hearing. In regard to these admissions inferred from acquiescence in the verbal statements of others, on the maxim, '*Qui tacet consentire videtur,*' it has been most justly remarked, that nothing can be more dangerous than this kind of evidence, and that it ought always to be received with caution, and never admitted at all unless the statements be of that kind that naturally call for contradiction—some assertion made to the party with respect to his rights, which by his silence he acquiesces

in.  [Moore v. Smith, 14 S. & R. 392.]  *A distinction is taken between declarations made by a party interested and a stranger, and it has been determined, that, while what one party declares to the other, without contradiction, is admissible evidence, what is said by a third-person may not be so*  (Child v. Grace, 2 Car. & Payne, 193); and we are also told that the silence of the party, even when the declarations are addressed to himself, is worth very little as evidence, when the party has no means of knowing the truth or falsehood of the statement.  [Hayslep v. Gymer, 1 Ad. & El. 162-5.]  The allowance of the proof here was palpably wrong."

We have underlined one clause peculiarly applicable.  The courts draw the distinction, under the circumstances of the case, as between statements made by parties interested and strangers.  If John Jones had a claim against me and in a statement openly said I owed him for certain reasons, and I declined to make any reply, that is one case.  But if some third person, having no connection whatever with John Jones, said to me, You owe John Jones for certain reasons, that is another case.  Between the two the books generally, and the cases in this State, draw a distinction.  It is an impertinence for one not interested to tell me that I am liable to John Jones.  Such impertinences require under our rules, no answer.  It is likewise just as much of an impertinence for a stranger to the controversy to say to me, You owe John Jones by reason of your negligence.  There can be no distinction drawn between the two supposed cases.  All considered, there are not less than two and perhaps three expressed rulings of this court set at naught by the ruling of the Court of Appeals in this case.  These we have tried to outline, supra, thus: (1) the physical situation of the parties did not demand a denial; (2) the relationship

of the girl to the co-defendant, who might have adverse interests, did not demand a denial; (3) the statement, if made (a matter we seriously doubt) was one not called for by the question, and was therefore purely voluntary, and in the highest degree an impertinence; and (4) Dr. Howard, even if in a physical situation, where a protest might seem to be expected, still had the right to consider his own interests in the controversy and for that reason alone decline to reply. All these doctrines are recognized by this court, and all are ignored by the ruling of the Court of Appeals in this case.

Thus, in the very recent and most excellent work, 1 R. C. L. p. 478, it is said: "Intimately connected with admissions that are implied by the acts or conduct of the party are admissions by silence or acquiescence. If a statement is made in the hearing of another, in regard to facts affecting his rights, and he makes no reply, it may be a tacit admission of the facts stated; depending upon whether he hears and understands the statement, and comprehends its bearing, whether the truth of the facts embraced in the statement is within his own knowledge, *whether the circumstances are such as to afford him an opportunity to act and speak freely, and whether the statement is made under such circumstances and by such persons as naturally to call for a reply if he did not intend to admit it.* So, if the matter is of something not within his knowledge, *or if the statement is made by a stranger whom he is not called on to notice, or if he is restrained by fear, by doubts of his rights, or by the belief that his security will be best promoted by his silence,* then no inference of assent can be drawn from silence."

Bear in mind that "a stranger" as used in all these rules means one not a party to the suit or controversy.

Bear in mind that the circumstances surrounding the parties are material. Bear in mind that he can refuse to reply because he may deem his security to be best subserved by silence. In either of such instances no inference of assent can be drawn from a failure to reply. The case at bar is stronger. The physical situation of the girl and Dr. Howard was not such as to call for a reply. The voluntary statement would justify silence upon the ground of self-security. The relationship of the girl to a co-defendant with apparent adverse interests would prompt silence. These doctrines of law are recognized by the rulings of this court, as we have pointed out. They were ignored by our learned brothers of the bench. It requires no "grey mule" case. It is only necessary for us to find that the general doctrines of law or equity as announced by this court upon similar questions have been contravened.

In fact, under the weight of general authority evidence of this character is considered to be so weak in probative force that it is rarely ever admitted. The circumstances must point very clearly to the necessity for reply, before it can be admitted at all. The books look upon it (admission by his silence) as the weakest of all evidence in probative force, but yet as most dangerous to a defendant in the trial. That the verdict in this case could not have been obtained without this prejudicial evidence, I have little doubt. That the unlettered (scientifically speaking) process server misunderstood *iodine* for *dionin,* I have little doubt, if the talk took place at all. All the circumstances of the case point that way. However these last few lines are beside the question, and only serve to show that even strict legal rules may at least sometimes work out righteous results. For the reasons aforesaid, the judgment of the Court of Appeals should be quashed.

III.   It is urged with much force that the facts found fail to show any causal connection between the injury proven, and the acts of the defend
**Causal Connections.** ants or either of them.   There is much substance in the contention, and if we had in the Court of Appeals opinion all of the facts upon the issue, I would feel constrained to discuss it, notwithstanding our ruling in paragraph two, supra.   That ruling disposes of the judgment of the Court of Appeals, and leaves the case so that such court will have to award a new trial *nisi*, and this, coupled with the further fact that on such new trial further evidence connecting the acts of the defendants with the injury may be introduced, we, personally, prefer not to give expression to our views upon the recited facts in the opinion upon that question.   In this case we are confining ourselves to the facts stated in the opinion, although we have read the whole record, and have our own impressions as to the facts therein.   Let the record of the Court of Appeals be quashed.

It is so ordered.   *Woodson, C. J.,* and *Faris* and *Blair, JJ.,* concur; *Walker, J.,* dissents in opinion filed; *Bond, J.,* dissents, because he thinks this court without jurisdiction; *Revelle, J.,* not sitting.


WALKER, J. (dissenting)—I do not concur in the majority opinion.

The limiting of the review of this case in the majority opinion to an examination of the opinion of the Court of Appeals is in accord with the qualified power granted by *certiorari* to the Supreme Court under the Constitution (Art. VI, sec. 6, Andt. 1884) to supervise the rulings of such courts, and is not subject to objection.

The field of operation of the writ under the power granted by the Constitution is much more limited

than at common law.  This court would have no power
to quash a judgment of a Court of Appeals on account
of its nonconformity with our last previous ruling, if
it were not for the constitutional provision which au-
thorizes a review only under the conditions therein
prescribed.  The sole source of the Supreme Court's
power in this regard being in the provision of the Con-
stitution referred to and the same relating only in any
given case to the judgment of the particular court of
appeals, we must look to the opinion of said court
upon which the judgment is based and which of neces-
sity contains the rulings and the reasons for the ren-
dition of the judgment to determine whether cause ex-
ists for the issuance of the writ.  To extend our exam-
inaton further would be to question the integrity of
the judgment of the Court of Appeals, the appellate
jurisdiction of which, except as to the question of ex-
cess, is complete in the class of cases to which the one
under review belongs.  More than this, it would con-
stitute an usurpation of appellate jurisdiction by the
Supreme Court properly belonging to the courts of ap-
peals and render them intermediate courts of review,
instead of tribunals of final jurisdiction within the
meaning of the Constitution.  As we have indicated,
the review in the case at bar in the majority opinion,
being confined to proper constitutional limits, other
matters may appropriately engross our attention.

It is urged that the office attendant was not per-
sonally present when she made the damaging state-
ment to Dr. Howard in response to his inquiry to
which he made no reply; that she was not his em-
ployee, but that of his co-defendant, Dr. Tiffany;
that her statement was not in response to Dr. How-
ard's inquiry, and hence was a mere impertinence and
that he was not called upon to reply thereto.  In view
of all of which it is held that the ruling of the Court of
Appeals in approving the admission of testimony in

regard to this matter was error and authorizes a review by this court of the opinion of said court, provided, of course, its opinion is not in accord with the last previous ruling of this court on the subject.

Visual and immediate physical presence is not necessary to authorize the application of the ruling which renders testimony in regard to a damaging statement competent and construes silence, under a proper statement of facts, to be an admission of the truth of such statement.

So far as the matter of personal presence is concerned, proximity within a distance sufficient to permit the hearing and understanding of what is said is all that is required. The person making the statement, therefore, should be so situated that the one in whose hearing it was made and whose duty it may be to reply to same may be enabled to hear and understand the statement and thus comprehend its meanng. It is not contended that Dr. Howard did not hear and understand the statement. If this fact were not conceded the circumstances would justify no other conclusion. He made the inquiry in regard to the case he had treated and of which she had kept the record. She heard and understood him, because she replied thereto, designating the patient. That he heard and understood her is evident from the testimony of the deputy sheriff who was in his immediate presence when the reply was made, and who not only heard but comprehended what she said. In the face of these facts, what did it matter whether the attendant was within the sight and touch of Dr. Howard when she made the statement or in Dr. Tiffany's office in another room?

The cases may be examined in vain for an authority holding that a damaging statement of the character here under consideration is not admissible because not made in the immediate presence of one

whose duty it may have been to deny the same. This is true because, as we have stated, hearing and under-standing are the tests of admissibility and not mere proximity.

The fact that the office assistant was not an employee of Dr. Howard, but of his co-defendant, is urged in the majority opinion as a reason why he was not required to deny her statement. The rule regulating the admission of evidence of the character here under consideration does not in reason, and should not, require that the person making the damaging statement shall bear any relation to the person whose duty it may have been to deny the statement, to avoid the implication which the law permits that silence indicates acquiescence. The test of admissibility is not the relation of the parties, although this may and often does afford opportunities for an understanding of the matter not otherwise obtainable; but did the person making the statement, irrespective of any relation, have such a knowledge of the subject as to enable him or her to speak understandingly in regard thereto? Let it be conceded that the office assistant was the employee of Dr. Tiffany. Dr. Howard, on account of his professional relation, must have had a general knowledge of the case concerning which he made the inquiry. She must have had a particular knowledge of same, on account of her custody and keeping of the records of the office. Her knowledge and understanding of the matter, therefore, could in nowise have been different or more complete had she been in his employ instead of that of Dr. Tiffany. In addition, the inquiry made by Dr. Howard is, in itself, proof of her possession of such information in regard to the case as to render testimony concerning the statement, as preliminary to showing his silence, clearly admissible. If she did not possess this knowledge, for what purpose was the inquiry made, espe-

cially in view of the Doctor's general knowledge of same and his connection therewith?

The specific inquiry which evoked the statement around which this controversy centers was made by Dr. Howard to the office assistant in his asking her "if she had the record in the Mary Coffey case." She replied "that she had and that the patient was the school teacher that he had dropped iodine in her eye and put it out." It is announced in the majority opinion that this reply was not responsive to the inquiry and hence it was not incumbent on the Doctor to deny same.

A statement may be irresponsive so far as it relates to the inquiry which prompted it, but this does not measure the duty as to the denial of same by one whose rights are thereby affected and whose silence may import an admission as to the truth of the statement. The measure of duty demanding a denial depends upon whether the rights of the person concerning whom the statement is made is affected thereby. If such statement is adverse and is made by one who is enabled from knowledge of the facts to speak understandingly, then a denial is incumbent upon the person referred to.

Here the statement was not made by a stranger, but by one who, on account of her relations, was familiar with the case. The statement had reference to a matter with which the Doctor was also familiar, otherwise he would not have made inquiry for further informaton in regard to same. In addition, and of prime importance in determining whether or not the statement may be regarded as an impertinence, it is evident that it had reference to the Doctor's rights and if unchallenged could not be construed otherwise than as adverse to his interest. His duty, therefore, to deny same was plain.

The Court of Appeals pertinently says in regard to this phase of the case:

"Had the charge come from an impertinent stranger, no admission of its truth could be implied from the silence of the accused. It did not come as an impertinence, but in answer to a question asked by the accused of the young woman who was a sort of *factotum* in the office of defendants, received their patients, inquired into their business and kept the office record of cases treated by defendants. The question asked by Dr. Howard called for information kept by her in the course of her employment for the benefit and future use of her employers, and her answer was in direct response to that question. It purported to give him the facts relating to the history of the case as she had received them from him, and it would have been most unnatural for him not to deny such a charge if it were false, no matter who was present. It was just as though she had said: 'You told me you put out the woman's eye and that is the history of the case in this office.' A charge of that kind, if false, would bring a denial from any man under any circumstances. The evidence was properly admitted."

In Commonwealth v. Kenney, 12 Metc. (Mass.) 237, it is announced that where a damaging declaration is made in one's hearing and he makes no reply, his silence may be held to be a tacit admission of the truth of the declaration under these conditions: that he heard and understood the declaration and comprehended its meaning; that the truth embraced therein was within his knowledge; that he was at liberty to make a reply; that the declaration was made under such circumstances and by such a person as to demand a reply, if he did not intend to admit it.

We realize that we are not required to go beyond our own cases to determine the admissibility of testimony in a case submitted for our determination, as is the one at bar. But to avoid citations to numerous authorities we have found it most convenient to em-

ploy the summary found in the Massachusetts case, as embodying all the essentials of our own rulings. In no other case have we found a clearer or more concise statement of the conditions which must be present to authorize the admission of testimony in regard to a statement demanding a denial. A comparison with the facts in the case at bar discloses the presence of all the conditions declared to be necessary in the case cited.

The following cases are either discussed in the majority opinion or are cited by the petitioners for the writ herein as in conflict with the rulings of the Court of Appeals in the admission of this testimony: State v. Hamilton, 55 Mo. 520; Phillips v. Towler's Admr., 23 Mo. 401; State v. Young, 99 Mo. 666; Adams v. Railway, 74 Mo. 553; Wojtylak v. Coal Co., 188 Mo. 260; Shake v. Mullins, 101 Mo. 517; State v. Glahn, 97 Mo. 679. We will review them in their order to enable it to be determined, from a fair statement of the facts in each, whether they contravene the ruling under review.

In State v. Hamilton, supra, the remarks received in evidence were not, as in the instant case, directed to the defendant, and hence did not charge him with any offense. The Hamilton case is referred to and distinguished by the Court of Appeals as presenting a different state of facts from those in the case at bar.

In Phillips v. Towler's Admr., supra, a remark was made in the presence of the owner of a slave that the slave had burned the building in controversy and had confessed, to which the owner made no response. It was not shown that the owner had any personal knowledge of the transaction and, of course, the remark made no charge against him. His silence under these circumstances, being the silence of one not personally accused, could in no sense be held to be an acquiescence in the truth of the statement.

In State v. Young, supra, the remark charged to have been made in the presence of the accused was made while the latter was under arrest and therefore in no position to make a denial. Further than this, the remark was made by a mere stranger, who is not shown to have had any knowledge of the case, and while made in the presence of the accused, it was not addressed to him and was therefore no more than an impertinence which did not require a denial.

Adams v. Railroad, supra, instead of containing a ruling adverse to that of the Court of Appeals, is an authority in support of same. The Adams case holds that the declarations of an agent are admissible as evidence against his principal only when made while transacting the business of the principal and as a part of the transaction which is the subject of the inquiry in the suit in which they are offered. The office attendant, in the case in controversy, was engaged in the transaction of Dr. Howard's business and was therefore his agent when she was asked by him if she had the record in the Coffey case, and her reply was made in response to this inquiry; that the inquiry was a part of the entire transaction is evident from the fact that the deputy sheriff had just served a summons upon Dr. Howard in the suit brought by the plaintiff for the injury about which the inquiry was made.

In Wojtylak v. Coal Co., supra, there is no ruling which by remote inference can be said to sustain the petitioners' contention.

In State v. Mullins, supra, the declaration charged to have been made was in a judicial proceeding and hence not within the rule.

In State v. Glahn, supra, it is held that the rule in regard to admissions inferred from acquiescence in the verbal statements of others has no application except when the statement calls for action or reply on the part of the defendant. With this statement of the rule

we have no fault to find, but we question the propriety of its application to the facts at bar, except to sustain the ruling of the Court of Appeals. If there ever was a case calling for action or reply it was in the one now under consideration. Dr. Howard was familiar with all the facts, he had been the principal actor in the case, he knew from the service of the summons then made by the officer that the plaintiff had asserted in a court of law her right to damages for the injuries he was alleged to have inflicted; when, therefore, the declaration as to his liability was made by the attendant that he had dropped iodine in the eye of the school teacher (meaning plaintiff) and put it out, his duty, to avoid the application of the rule as to the inference the law permits to be drawn under such circumstances, became imperative to deny the truth of the declaration.

The decision of the Court of Appeals admitting the testimony in question did not contravene any previous ruling of this court on the subject. More than this, it is in accord with the strong current of authority elsewhere. There is, therefore, no authority for the exercise of our supervisory power. [2 Wigmore on Ev., sec. 1071; 2 Mod. Ev., Chamberlayne, secs. 1418-1433; 2 Jones Com. on Ev., sec. 289; and Wigmore on Ev., sec. 1071, containing reference to latest cases.]

In view of the reasons stated and the conclusions flowing therefrom, it follows that our writ should be quashed, which will result in an affirmance of the judgment of the Court of Appeals.