ROBERT PAYNE ALLEN ET. AL. *v.* STATE, USE OF MARY E. TAETLE ET AL.

[No. 11, January Term, 1938.]

*Decided February 3rd, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*James J. Lindsay* and *W. Albert Menchine,* for the appellants.

*Joseph Sherbow,* with whom was *S. Herbert Harris* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

The appeal is from a judgment for damages from the death of the husband and father of the equitable plaintiffs in a collision of motor vehicles at a street crossing in Baltimore City. Code, art. 67, sec. 1 *et seq.,* as amended by Laws 1929, ch. 570, sec. 3. And the questions pressed are whether the evidence offered was legally sufficient to support a finding of negligence on the defendants' part causing the accident, and whether the credibility of one of the defendants could be impeached on cross-examination by showing his refusal to testify at a coroner's inquest.

The question of negligence turned on the condition of signal lights at the time, and the right of way given by them. The deceased kept a shop at the northwest corner of Belair Road and Parkside Drive, and was starting eastwardly to make some deliveries of goods sold, and, in crossing Belair Road, which runs in a general northerly direction, he collided with a truck coming south on that road, driven by the defendant Allen and owned by Curtis. There were traffic signal lights hanging over

the intersection from the southwest and northeast corners, and these always showed green lights, and gave the right of way to traffic on Belair Road, except when a vehicle approaching on the cross road changed the signal by tripping a treadle in the roadway. A green light signal was then given to the cross road traffic after the Belair Road traffic had had a green light for a minimum of forty seconds, the change, however, requiring four seconds in any event. The Belair Road traffic then, of course, received a red light signal, stopping it. The official of the police department in charge of the signals, and the officers stationed in the neighborhood, testified that, on a change, a red light on the cross street, or on the Belair Road, would yield directly to green, but that, changing from the green, first there was an amber showing with the green for four seconds, and then both yielded to red.

Seven witnesses gave evidence for the defendant tending to prove that a green light was showing for traffic on the Belair Road as the two vehicles approached the crossing, some of them adding that the green had succeeded a red light only a short time before, when the truck was still part of a block away. And against this there was testimony for the plaintiffs that a young man waiting to cross the Belair Road on foot saw an amber light, which, according to the officers would show with the green and be followed by red, and that the wife of the deceased, watching from the side of the house, saw on the Parkside Drive signals, those toward her husband, first an amber light, then a green, which according to the officers was an impossible sequence. Whatever the comparative weight of the testimony of the young man and the wife, there was in it some evidence of a right of way given to the deceased, and violation of the right by the driver of the truck, and this was sufficient in law to support a finding of negligence in the latter causing the accident. Prayers of the defendants for direction of a verdict in their favor because of lack of such evidence were, therefore, properly refused.

The controversy on the admission of the fact of the witness' previous refusal to testify is presented informally in the record, but it seems sufficiently clear that the defendants' counsel, while endeavoring to mitigate any detrimental effect on his side from it, was objecting to this testimony, and that the court was overruling the objection and admitting the evidence. It appears that at a coroner's inquest on the death the coroner said to the driver of the truck, one of the present defendants, "Robert C. Allen, I am conducting an inquest into the death of David Taetle. You are charged with having caused it. While you are not compelled to testify, whatever you say can be used against you at some future date. Is it your desire to testify?" His attorney, who was present, replied that he refused to testify. When on the subsequent trial of this civil case Allen, having given evidence to show a lack of any negligence on his part, was asked whether he remembered having been at the inquest, his counsel interposed with a question what that had to do with the case, and this brought on a colloquy in which the counsel stated that the witness had refused to testify on advice of counsel, reserving the testimony as not then necessary. The court explained that while the witness had a right to reserve it, the opposing counsel had, in the opinion of the court, a right now to question the witness on the fact, as it bore on his credibility. The witness was then asked as to the occurrences at the inquest, whether his counsel had been present and had answered the coroner that he, Allen, refused to testify. A formal objection was overruled, and Allen answered that he thought his lawyer had so answered.

The question of admissibility of that fact under such circumstances is one on which this court has had no occasion to express an opinion in the past, and on which other courts are divided. See *Raffel v. United States,* 271 U. S. 494, 46 S. Ct. 566, 70 L. Ed. 1054; *Boney v. Boney,* 161 N. C. 614, 77 S. E. 784; *Parrott v. State,* 125 Tenn. 1, 139 S. W. 1056; *State v. Ellison,* 266 Mo. 604, 182 S. W. 996, and study in 21 Illinois Law Review, 397.

Neither the Declaration of Rights nor the statutes of the state prohibit impeaching a defendant in a civil case by cross-examination on his silence at any previous time. Declaration of Rights, art. 22; Code, art. 35, sec. 4. And the court would not consider itself authorized to protect the immunity which they give in criminal proceedings specifically by extending it beyond those proceedings. The question of admissibility is viewed as one of relevancy, as a question whether the earlier refusal of this defendant, when an opportunity was offered, under the circumstances recited, to give his present exculpatory version of the accident, might be taken by the jury to mean that he did not then have that version to give, that the version he might then have given was one he feared might tend to incriminate him. The judges of this court are not all of the same opinion on the question, but the majority think that the previous failure to testify could be given that significance, and that the evidence of it was therefore admissible, and the ruling correct.

*Judgment affirmed, with costs.*